[No. B237818. Second Dist., Div. Three. Jan. 10, 2013.]

BARBARA FORTMAN, Plaintiff and Appellant, v.
FÖRVALTNINGSBOLAGET INSULAN AB et al., Defendants and
Respondents.

## COUNSEL

Grassini & Wrinkle, Roland Wrinkle and Lars Christian Johnson for Plaintiff and Appellant.

Lesser & Associates and Steven M. McGuire for Defendants and Respondents.

## OPINION

**ALDRICH, J.**—Barbara Fortman seeks to recover as a bystander for the emotional distress she suffered when she witnessed the tragic death of her brother Robert Myers while they were scuba diving off the coast of Catalina Island. At the time of the accident, Fortman thought her brother had a heart attack. She later learned that a plastic flow-restriction insert manufactured by defendant Förvaltningsbolaget Insulan AB, doing business as SI Tech (the company), had become lodged in Myers's second-stage regulator, which prevented him from getting enough air to breathe while underwater.

In *Thing v. La Chusa* (1989) 48 Cal.3d 644 [257 Cal.Rptr. 865, 771 P.2d 814] (*Thing*), the Supreme Court established three mandatory requirements to state a claim for negligent infliction of emotional distress (NIED) under the bystander theory of recovery. Our focus is on the second *Thing* requirement, that is, the plaintiff must be "present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim." (*Id.* at pp. 667–668.) This tort was developed and refined in traffic accident cases in which recovery was limited to those plaintiffs who were present and contemporaneously perceived the causal connection between the accident and the injuries suffered by a close relative. We must determine whether bystander recovery for NIED is barred when Fortman could not experience a contemporaneous sensory awareness that the company's defective product was the cause of her brother's injuries.

We are bound by the limits to bystander recovery that the Supreme Court has articulated in *Thing*, which requires a contemporaneous perception of what caused the injury. When, as here, Fortman witnessed the injury, but did not meaningfully comprehend that the company's defective product caused the injury, she cannot satisfy the second *Thing* requirement. Accordingly, as a matter of law, Fortman does not have a viable NIED claim. The trial court properly granted the company's motion for summary judgment.

### UNDISPUTED FACTS

1. *The Day of the Accident*

On the day of the scuba diving accident, Myers was wearing a Catalyst 360 dry suit, manufactured by defendant White's Manufacturing, Ltd. (White's). The dry suit came equipped with a low-pressure hose that incorporated a small plastic flow-restriction insert. The company manufactured the hose and insert.

A few minutes into the dive, Myers signaled to Fortman that he wanted to ascend. Fortman put her hand on Myers's arm when they began their ascent, but she realized that despite kicking, they were no longer ascending. Fortman stopped kicking, and they sank to the bottom of the ocean floor where Myers landed on his back. Myers's eyes were wide open, but he was not responsive. Fortman is unclear whether Myers was still breathing. Fortman testified: "I didn't even know to look to see whether he's breathing. I mean, it didn't occur—it didn't—I didn't allow myself to think that there was really something wrong with him. I don't think he was still breathing."

Fortman tilted Myers's head back as they again began to ascend so that if his air flow were constricted he could breathe with his regulator. Myers remained unresponsive during the ascent and approximately halfway to the surface, Myers's regulator fell out of his mouth. Upon arriving to the surface, Fortman summoned help. Myers was transported to the University of Southern California Catalina Hyperbaric Chamber at Two Harbors on Catalina Island where he was pronounced dead.

Fortman testified that she thought Myers had a heart attack. After an investigation into the incident, Fortman learned that her brother's equipment malfunctioned.

### 2. *The Investigation*

The Los Angeles County Sheriff's Department investigated the scuba diving accident. The investigators collected Myers's scuba gear. The second stage of the regulator was examined by technicians who found a black cylindrical object, known as a "flow restriction insert," in the regulator that did not appear on any of the product schematics. According to the investigation report, the flow-restriction insert was in a location "that would appear to restrict normal airflow." The insert came from the company's low-pressure dry suit hose. Investigators determined the flow-restriction insert caused the regulator to fail.

## PROCEEDINGS

### 1. *Complaint Seeking Bystander Recovery for Emotional Distress*

Fortman and Myers's heirs filed suit. Fortman sought to recover emotional distress damages, alleging that while her "brother was being fatally injured by defendants' defective and unsafe products . . . [she] was present at the time and place of the occurrences described herein, and contemporaneously observed, witnessed, and saw that her brother's eyes bulged out of his head and

that he was unresponsive to her signals, and perceived that her brother had stopped breathing and was being fatally injured by said products."

### 2. *Motion for Summary Judgment*

The company and White's filed a joint motion for summary judgment, contending that Fortman could not establish a contemporaneous awareness of the causal connection between the injury-producing event and the resulting injury. They maintained that while Fortman may have seen her brother suffer injuries, she could not have perceived that he was being injured by the company's product.

In response, Fortman conceded that she could not perceive the flow-restriction insert becoming lodged in Myers's second-stage regulator. But Fortman argued to satisfy the second *Thing* requirement, she only had to establish that she observed the accident, not what caused the injury.

In a 10-page minute order, the trial court granted summary judgment. The court relied on medical negligence cases addressing bystander recovery in which the injury-producing event could not be perceived or could not be meaningfully understood to have caused injury. The court concluded the " 'contemporaneous awareness' element [in *Thing*] requires not only that the NIED plaintiff perceive the injury as it occurs (which Plaintiff Fortman undisputably did . . . ), but also that the NIED plaintiff be aware, at least in a general sense, of what is causing the injury." Based upon the undisputed facts, Fortman thought her brother had suffered a heart attack; she did not contemporaneously perceive his injuries were being caused by the company's defective product. Thus, the trial court concluded that Fortman had no viable NIED claim.

After judgment was entered, Fortman filed this timely appeal.

### DISCUSSION

■ Negligently causing emotional distress is not an independent tort; it is the tort of negligence, to which traditional elements of duty, breach of duty, causation, and damages apply. (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1072 [9 Cal.Rptr.2d 615, 831 P.2d 1197]; *Thing, supra*, 48 Cal.3d at p. 647; *Dillon v. Legg* (1968) 68 Cal.2d 728, 733–734 [69 Cal.Rptr. 72, 441 P.2d 912] (*Dillon*).) When emotional distress is the only injury a plaintiff alleges, as is the case here, the courts have determined that whether the plaintiff may recover emotional distress damages depends upon whether the defendant owes a duty to the plaintiff. (*Dillon*, at pp. 739–741; *Thing*, at

p. 647.) "[B]ystander liability is premised upon a defendant's violation of a duty not to negligently cause emotional distress to people who observe conduct which causes harm to another." (*Burgess v. Superior Court*, at p. 1073.)

### 1. *The Mandatory* Thing *Requirements*

■ "[A] plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person if, but only if, said plaintiff: (1) is closely related to the injury victim; (2) *is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim*; and (3) as a result suffers serious emotional distress—a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances." (*Thing, supra*, 48 Cal.3d at pp. 667–668, fns. omitted, italics added.) The court expressly emphasized the mandatory, exclusive nature of these requirements and rejected the idea that liability should be determined pursuant to the general principles of foreseeability applied in *Rowland v. Christian* (1968) 69 Cal.2d 108, 112–113 [70 Cal.Rptr. 97, 443 P.2d 561]. (*Thing*, at p. 668, fn. 11.)

*Thing* clarified the guidelines the Supreme Court had established in *Dillon, supra*, 68 Cal.2d 728, in order to create "certainty in the law" and, based upon traditional tort concepts, to dictate limits on bystander recovery. (*Thing, supra*, 48 Cal.3d at pp. 647, 668.) In *Dillon*, the court articulated a set of nonexclusive guidelines for assessing foreseeability, and thus the question of duty was determined on a case-by-case basis. (*Dillon*, at pp. 740–741.) Applying the *Dillon* guidelines resulted in inconsistent precedent.

*Thing* noted that "the only thing that was foreseeable from the *Dillon* decision was the uncertainty that continues to this time as to the parameters of the third party NIED action." (*Thing, supra*, 48 Cal.3d at p. 655.) Post-*Dillon* cases showed an expansive progression of the guidelines. (*Thing*, at pp. 656–661.)

*Thing* ended this expansion by making mandatory the requirements that the Supreme Court first enunciated in *Ochoa v. Superior Court* (1985) 39 Cal.3d 159 [216 Cal.Rptr. 661, 703 P.2d 1]. (*Thing, supra*, 48 Cal.3d at p. 667.) In *Ochoa*, the court held bystander recovery of emotional distress damages was sufficiently alleged because the mother witnessed her son's negligent medical care. (*Ochoa v. Superior Court*, at pp. 169–170.) As the *Ochoa* court stated, "[w]e are satisfied that when there is observation of the defendant's conduct and the child's injury and contemporaneous awareness the defendant's conduct or lack thereof is causing harm to the child, recovery is permitted." (*Id.* at

p. 170.) Contemporaneous awareness is articulated in the second *Thing* requirement, as the plaintiff must be "then aware that [the injury-producing event] is causing injury to the victim." (*Thing, supra*, 48 Cal.3d at pp. 667–668.)

As previously noted, it is undisputed that Fortman was present and aware that her brother was suffering an injury. The issue here is whether Fortman contemporaneously perceived that the company's defective product was causing her brother's injury. The respondents rely on medical malpractice cases denying bystander recovery. In each of these cases, the plaintiff did not perceive the cause of the victim's injuries, and thus did not have a contemporaneous awareness of the causal connection between the defendant's medical treatment and the victim's injuries. Fortman relies on accident cases permitting bystander recovery. From these pertinent bystander cases, it is clear that to satisfy the second *Thing* requirement the plaintiff must experience a contemporaneous sensory awareness of the causal connection between the defendant's infliction of harm and the injuries suffered by the close relative.

### 2. Survey of Pertinent Cases

#### a. Post-Thing *Medical Malpractice Cases*

In medical malpractice cases, an NIED plaintiff cannot recover under the bystander theory for emotional distress damages arising from unperceived medical errors in the course of treatment. In the cases discussed below, the plaintiffs' emotional trauma did not arise from witnessing the injury-producing event, usually referred to as the "negligent conduct," and therefore the plaintiffs could not satisfy the second *Thing* requirement.

##### 1. Bird v. Saenz

*Bird v. Saenz* (2002) 28 Cal.4th 910 [123 Cal.Rptr.2d 465, 51 P.3d 324], held that in medical malpractice cases, the second *Thing* requirement is satisfied if the plaintiff meaningfully perceives the negligent conduct and the resulting injury. (*Bird v. Saenz*, at p. 917.) The plaintiffs in *Bird* did not observe the operation in which their mother's artery had been transected, but they witnessed the traumatic consequences, including the failure to diagnose and treat the damaged artery. (*Id.* at pp. 912–914.)

The Supreme Court concluded the plaintiffs did not have a viable NIED claim based upon the failure to diagnose and treat their mother's damaged

artery.[1] "The problem with defining the injury-producing event as defendants' failure to diagnose and treat the damaged artery is that plaintiffs could not meaningfully have perceived any such failure. Except in the most obvious cases, a misdiagnosis is beyond the awareness of lay bystanders. . . . Even if plaintiffs believed, as they stated in their declarations, that their mother was bleeding to death, they had no reason to know that the care she was receiving to diagnose and correct the cause of the problem was inadequate. While they eventually became aware that one injury-producing event—the transected artery—had occurred, they had no basis for believing that another, subtler event was occurring in its wake." (*Bird v. Saenz, supra,* 28 Cal.4th at p. 917.)

Although not ruling out the possibility of establishing contemporaneous awareness in the appropriate medical malpractice case,[2] the *Bird* court cited *Ochoa v. Superior Court, supra,* 39 Cal.3d 159, to contrast the difference between observable medical negligence, permitting NIED recovery, and unobservable misdiagnosis cases. (*Bird v. Saenz, supra,* 28 Cal.4th at pp. 919–920.) The injury-producing event in *Ochoa* was the failure of custodial authorities to respond to symptoms requiring immediate medical attention. (*Ochoa v. Superior Court,* at p. 170.) "Such a failure to provide medical assistance, as opposed to a misdiagnosis, unsuccessful treatment, or treatment that turns out to have been inappropriate only in retrospect, is not necessarily hidden from the understanding awareness of a layperson." (*Bird v. Saenz,* at p. 920.)

*Bird v. Saenz, supra,* 28 Cal.4th 910, criticized *Mobaldi v. Regents of University of California* (1976) 55 Cal.App.3d 573 [127 Cal.Rptr. 720], which held that the plaintiff could recover for NIED if she contemporaneously observed the harm inflicted upon another. (*Bird v. Saenz,* at pp. 920–921.) In *Mobaldi,* the plaintiff sought to recover emotional distress damages as a bystander when her child was seriously injured by an incorrectly prepared intravenous solution. (*Mobaldi v. Regents of University of California,* at p. 578.) The mother watched as her child suffered convulsions and lapsed into a coma. (*Ibid.*) The court concluded, "So long as the plaintiff's observation of the results of the defendant's infliction of harm upon another is direct and contemporaneous, there is no significance in the plaintiff's lack of awareness that the defendant's conduct inflicting the injury is negligent. To reason otherwise would deny the protection of *Dillon* to a

---

[1] Defining the injury-producing event as the transection, the court concluded the plaintiffs' claim fell within the category of cases the second *Thing* requirement was intended to bar.

[2] "This is not to say that a layperson can never perceive medical negligence, or that one who does perceive it cannot assert a valid claim for NIED. To suggest an extreme example, a layperson who watched as a relative's sound limb was amputated by mistake might well have a valid claim for NIED against the surgeon. Such an accident, and its injury-causing effects, would not lie beyond the plaintiff's understanding awareness. But the same cannot be assumed of medical malpractice generally." (*Bird v. Saenz, supra,* 28 Cal.4th at p. 918.)

mother observing a child killed by a driver, whose only negligence is his intoxication, simply because the·mother can not be aware of the fact of drunkenness until after the accident." (*Id.* at p. 583.)

*Bird v. Saenz, supra,* 28 Cal.4th 910, agreed with *Mobaldi* only insofar as a "plaintiff need not contemporaneously understand the defendant's conduct as *negligent,* as opposed to *harmful.*" (*Bird v. Saenz,* at p. 920.) The Supreme Court criticized *Mobaldi*'s analysis and concluded it could not be reconciled with *Thing.* (*Bird v. Saenz,* at pp. 920–921.) The *Bird* court rejected permitting ·bystander recovery on nothing more than the observation of the results or aftermath of the defendant's infliction of harm, however direct and contemporaneous, reasoning the "court confused awareness of negligence, a legal conclusion, with contemporaneous, understanding awareness of the event as causing harm to the victim." (*Id.* at p. 920.) "To borrow the *Mobaldi* court's own example, the bystander to the fatal traffic accident knows the driver's conduct has killed the child, even though she may not know the driver was drunk. One takes a giant leap beyond that point, however, by imposing liability for NIED based on nothing more than a bystander's 'observation of *the results* of the defendant's infliction of harm,' however 'direct and contemporaneous.' [Citation.]" (*Id.* at pp. 920–921.)

## 2. *Golstein v. Superior Court*

*Golstein v. Superior Court* (1990) 223 Cal.App.3d 1415 [273 Cal.Rptr. 270], cited with approval by the Supreme Court in *Bird v. Saenz, supra,* 28 Cal.4th at page 918, addressed whether the plaintiffs could pursue an action to recover emotional distress damages as bystanders when they did not contemporaneously perceive the injury-producing event. The *Golstein* plaintiffs watched as their son underwent radiation therapy. (*Golstein v. Superior Court,* at p. 1417.) The parents later discovered that their son had been fatally overexposed to radiation when he developed symptoms of radiation poisoning.[3] (*Golstein,* at p. 1418.) "They did not, and could not, observe the radiation overdose . . . ." (*Ibid.*) The parents, however, were present and witnessed the results when the symptoms became visible and the poisoning caused a " 'grotesque alteration' " of their son's appearance. (*Ibid.*)

The parents had observed the procedure that was later determined to have been the injury-producing event, but they were not aware that the medical treatment was causing their son's injury. In disallowing the parents' bystander

---

[3] The injury-producing event was injecting the wrong solution, which could not be observed by the plaintiffs. (*Golstein v. Superior Court, supra,* 223 Cal.App.3d at p. 1423.) "Even accepting the injection as the 'accident,' its role in triggering the emotional trauma is meaningless because—unlike a car bearing down on one's child—the event was bereft of obvious danger." (*Ibid.*)

claim, the court stated that an "understanding perception of the injury-causing event is an essential component of . . . recovery." (*Golstein v. Superior Court, supra*, 223 Cal.App.3d at p. 1427.) The parents were "informed of the excessive [radiation] after the fact" but "during the radiation therapy they were unaware [that their son] was being overexposed." (*Id.* at p. 1418.) Thus, there was no "contemporaneous sensory awareness of the causal connection between the negligent conduct and the resulting injury." (*Id.* at p. 1427.)

The *Golstein* court noted that there was no analytical distinction between the parents' case and the standard medical malpractice case in which the injury is typically witnessed by the plaintiff, but the plaintiff does not see, or meaningfully comprehend, the actual injury-producing event. (*Golstein v. Superior Court, supra*, 223 Cal.App.3d at p. 1427, fn. 3.) The court opined that it was "reasonably certain the Supreme Court would not accept a conclusion which could apply *Dillon* recovery almost automatically to a medical malpractice plaintiff who observes only the suffering of the victim and not the actual event that causes that suffering." (*Ibid.*)

*Golstein* recognized that, although *Thing* did not discuss application of the mandatory requirements when the injury-producing event cannot be observed, *Thing* "purports to be a clarification of an entire field of law." (*Golstein v. Superior Court, supra*, 223 Cal.App.3d at p. 1427.) "Its policy statement appears to us to be clear: understanding perception of the injury-causing event is an essential component of *Dillon* recovery. In the case of an event which cannot be perceived, distress recovery is not allowed. . . . [W]e interpret *Thing's* policy statement as a requirement that *Dillon* plaintiffs experience a contemporaneous sensory awareness of the causal connection between the negligent conduct and the resulting injury." (*Ibid.*, fn. omitted.)

### b.  *Post*-Thing *Accident Cases*

Fortman relies on accident cases in which the plaintiffs contemporaneously understood that an explosion or fire was causing injury to a close relative. These cases address the limited flexibility developed in applying the second *Thing* requirement when the plaintiffs do not visually perceive the infliction of harm. Fortman's case is distinguishable because none of the cases she relies on involves an injury-producing event that cannot be contemporaneously perceived.

### 1.  *Wilks v. Hom*

In *Wilks v. Hom* (1992) 2 Cal.App.4th 1264 [3 Cal.Rptr.2d 803], a mother sued her landlord following an explosion and fire at her residence that killed one daughter and injured her other daughters. (*Id.* at p. 1267.) The mother did

not see the infliction of injuries to her daughters, but she knew that they were in their bedrooms when their house exploded. (*Id.* at pp. 1271–1273.) The mother saw, heard, and felt the explosion when she was propelled out the front door and knew that the blast emanated from one of her daughters' bedrooms. (*Id.* at p. 1273.) "Wilks had to have known at the time of the explosion that [her daughters] were experiencing injury." (*Ibid.*) The *Wilks* court concluded that this was sufficient to satisfy the second *Thing* requirement and upheld the award of emotional distress damages to Wilks because "she personally and contemporaneously perceived the injury-producing event and its traumatic consequences." (*Ibid.*)

### 2. *In re Air Crash Disaster Near Cerritos, California*

*In re Air Crash Disaster Near Cerritos, California* (9th Cir. 1992) 967 F.2d 1421 interpreted California law to conclude that a widow contemporaneously perceived the injury-producing event to satisfy the second *Thing* requirement because she arrived on the scene when the injury-producing event was still causing injury to her family members. (*Id.* at pp. 1423–1425.) Theresa Estrada's house was destroyed by fire after a jetliner crash. Returning home from a trip to a nearby grocery store, Estrada saw, heard, and felt a big explosion, but she did not know at the time that the jetliner had crashed into her home. (*Id.* at pp. 1422–1423.) Estrada arrived to find her house engulfed in flames with the knowledge that her husband and children were inside. (*Id.* at p. 1423.) The Ninth Circuit upheld the damages awarded to Estrada and concluded that while she was not present at the beginning of the injury-producing event, which the court defined as the fire, the disaster was still occurring when Estrada returned to her home. (*Id.* at pp. 1424–1425.) Like the mother in *Wilks*, Estrada was reasonably certain that her husband and children were victims of the accident. "There could be very little doubt in Estrada's mind that her husband and children were in the house that she saw engulfed in flames." (*Id.* at p. 1425.)

### 3. *Zuniga v. Housing Authority*

In *Zuniga v. Housing Authority* (1995) 41 Cal.App.4th 82 [48 Cal.Rptr.2d 353], disapproved on other grounds in *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1137–1139 [119 Cal.Rptr.2d 709, 45 P.3d 1171], the plaintiffs' extended family suffered injuries from a fire started by an arsonist at their residence in a public housing project operated by the Housing Authority of the City of Los Angeles (the Authority). (*Zuniga v. Housing Authority*, at pp. 89–90.) The Authority challenged a plaintiff's bystander claim to recover emotional distress damages on the ground that he did not observe the injury-producing event because he arrived at the residence after the emergency personnel were already at the scene. (*Id.* at pp. 91, 102–103.)

The *Zuniga* court concluded that the plaintiff had sufficiently alleged a cause of action for negligent infliction of emotional distress. (*Id.* at p. 103.) The plaintiff alleged that he arrived on the scene while the fire was still causing damage and "possibly still causing injury to his many relatives inside." (*Ibid.*)

Thus, to the extent there is any flexibility in the *Thing* requirements, case law permits recovery based on an event perceived by other senses so long as the event is contemporaneously understood as causing injury to a close relative.[4] (See *Bird v. Saenz, supra*, 28 Cal.4th at pp. 916–917 & fn. 3.) These cases do not abrogate the requirement of an understanding perception of the injury-producing event.

### c. Bystander Recovery in Products Cases

Fortman cautions against stringently applying the second *Thing* requirement when a close relative suffers a product-related injury where strict liability principles apply. Fortman cites two products cases, one decided before *Thing*, and the second decided post-*Thing*. *Thing*'s mandatory requirements apply in products cases without exception.

### 1. Shepard v. Superior Court

*Shepard v. Superior Court* (1977) 76 Cal.App.3d 16 [142 Cal.Rptr. 612], predated *Thing* and held that the plaintiffs could recover emotional distress damages under the bystander theory when they witnessed injuries to a close relative caused by a defective product. (*Shepard v. Superior Court*, at pp. 20–21.) The parents witnessed the death of their daughter and injuries to their son arising from a traffic accident when their children were thrown onto the highway because the rear door lock mechanism on their Ford Pinto wagon failed. (*Id.* at pp. 18–19.) The parents stated causes of action in strict products liability and warranty against Ford for physical injuries allegedly resulting from the emotional shock in witnessing the accident. The court rejected Ford's contention that limited *Dillon* to negligent conduct, concluding that by alleging the *Dillon* guidelines the plaintiffs had a viable NIED claim based upon the strict liability of a product manufacturer. (*Shepard v. Superior Court*, at p. 20.)

---

[4] Fortman also contends that these cases illustrate that the plaintiff need not know what caused the injury-producing event because the mother in *Wilks v. Hom* did not know the cause of the explosion, and the widow in *In re Air Crash Disaster Near Cerritos, California*, and the plaintiff in *Zuniga v. Housing Authority* did not know the cause of the fires that injured their close relatives. *Thing* does not require that the plaintiff have an awareness of what caused the injury-producing event, but the plaintiff must have an understanding perception of the "event as causing harm to the victim." (*Bird v. Saenz, supra*, 28 Cal.4th at p. 920.)

The *Shepard* majority employed the *Dillon* guidelines that the plaintiffs had to establish " 'sensory and contemporaneous observance of the accident.' " (*Shepard v. Superior Court, supra,* 76 Cal.App.3d at p. 19.) The court reasoned that it would defy common sense and logic to permit recovery by the bystander parents against the negligent driver, while exempting the manufacturer responsible for the defective product contributing to their injuries. (*Id.* at p. 21.) According to the majority, its conclusion was in "consonance with the stated purpose" of the doctrine of strict products liability, that is, to relieve the plaintiff from problems of proof and to ensure that the costs of injuries are borne by the manufacturers. (*Ibid.*) This is the same point that Fortman raises throughout her brief. In *Shepard,* there was a vigorous dissent to extending bystander recovery. (*Id.* at pp. 21–31 (dis. opn. of Kane, J.).)

The *Shepard* dissent criticized what it perceived as an expansion of *Dillon,* referring to the majority's opinion as creating a new cause of action. (*Shepard v. Superior Court, supra,* 76 Cal.App.3d at p. 22.) Based upon the case law and policy considerations, the dissent rejected the majority's creation of a new duty rendering product manufacturers strictly liable for the emotional tranquility of third party plaintiffs who witnessed product-caused injuries. (*Id.* at p. 31.) The dissent wrote that *Dillon* limited bystander recovery as a matter of public policy. Like the majority, the dissent examined whether a duty was owed and discussed the policy and social considerations that weighed in favor of limiting a product manufacturer's liability. (*Shepard v. Superior Court,* at pp. 24–31.) Based upon a discussion of the *Rowland* factors, the dissent concluded against creating a "new duty rendering the manufacturer liable upon the faultless doctrine of strict liability for the disturbance of the emotional tranquility of third party plaintiffs." (*Id.* at p. 31.)

*Thing* resolved the conflict between the majority and the dissent in *Shepard v. Superior Court, supra,* 76 Cal.App.3d 16, related to the limits on liability by establishing the mandatory and exclusive requirements to recover under the bystander theory for NIED.

### 2. *Ortiz v. HPM Corp.*

*Ortiz v. HPM Corp.* (1991) 234 Cal.App.3d 178 [285 Cal.Rptr. 728], addressed whether a plaintiff could recover if she arrived on the scene while the injury-producing event was still in progress. (*Ortiz v. HPM Corp.,* at p. 185.) The plaintiff sued the manufacturer of a plastic injection molding machine to recover for the emotional injuries she suffered when she saw her husband trapped in the machine. (*Id.* at p. 182.) The plaintiff arrived at the scene when the machine was still on, and the air cylinder was pressing across

her husband's chest. (*Id.* at p. 184.) Ortiz's husband did not appear to be breathing and his body was limp, supporting an inference that he was being deprived of oxygen. (*Id.* at pp. 184–185.)

*Ortiz* concluded that the trial court erred in granting a nonsuit because *Thing* only intended to deny recovery to those plaintiffs who come upon the scene after the event, not to those who personally observe an injury-producing event in progress. (*Ortiz v. HPM Corp., supra,* 234 Cal.App.3d at p. 185.) The *Ortiz* court also addressed whether the injury suffered was perceivable by the wife because the product manufacturer identified the injury as oxygen deprivation. (*Id.* at p. 186.) Although the plaintiff could not perceive the full extent of the injuries related to oxygen deprivation, she was aware that her husband was being injured by the defendant's machine. (*Ibid.*) Thus, the plaintiff satisfied the second *Thing* requirement.

### 3. *Fortman Cannot Recover Under the Bystander Theory for Negligent Infliction of Emotional Distress*

■ To satisfy the second *Thing* requirement, Fortman must be "present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim." (*Thing, supra,* 48 Cal.3d at pp. 667–668.) The cause of Myers's injury, or the "injury-producing event," was the company's defective product that restricted Myers's ability to breathe underwater through his regulator. As discussed below, based upon the pertinent cases and our independent review (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348 [1 Cal.Rptr.3d 32, 71 P.3d 296]), we conclude as a matter of law that Fortman cannot state an NIED claim under the bystander theory of recovery. It is undisputed that Fortman did not have a contemporaneous, understanding awareness that the company's defective product was causing her brother's injury.[5] In fact, Fortman thought that her brother's injury was caused by a heart attack.

#### a. Shepard*'s Viability Post*-Thing

■ Fortman appears to contend that because *Shepard v. Superior Court, supra,* 76 Cal.App.3d 16, is still good law, she has a viable NIED claim under the bystander theory of recovery. *Shepard v. Superior Court, supra,* 76 Cal.App.3d 16, applied the *Dillon* guidelines and cannot be reconciled with *Thing.* Post-*Thing,* we are limited by a more stringent definition of the contemporaneous awareness requirement. Based upon the mandatory requirements set forth in *Thing,* we also reject Fortman's attempt to expand

---

[5] The trial court's stated reasons for its summary judgment ruling do not bind us; our review is de novo and we review the trial court's ruling, not its rationale. (*California Aviation, Inc. v. Leeds* (1991) 233 Cal.App.3d 724, 730–731 [284 Cal.Rptr. 687].) Therefore, we do not address Fortman's arguments that the trial court added additional requirements not stated in *Thing.*

bystander recovery to hold a product manufacturer strictly liable for emotional distress when the plaintiff observes injuries sustained by a close relative arising from an unobservable product failure. To do so would eviscerate the second *Thing* requirement. As an intermediate court, we are bound by the decisions of our Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Fortman contends that applying the second *Thing* requirement precludes bystander recovery in all strict products liability cases. We do not agree and do not purport to hold that a plaintiff could never recover emotional distress damages under the bystander theory of recovery after perceiving a product-related injury. In addition to *Ortiz*, where the wife observed her husband's chest being crushed by a machine, we can envision a number of scenarios in which a bystander plaintiff might recover against a product manufacturer for NIED. A plaintiff would satisfy the second *Thing* requirement if he or she were present at a backyard barbecue and observed the defendant's propane tank connected to the barbecue explode and injure a close relative, or if the plaintiff observed a ladder collapse and injure a close relative. Such accidents would not be beyond the plaintiff's contemporaneous, understanding awareness of the event (i.e., product failure) inflicting harm to the victim. The plaintiff need not know the cause of the propane tank explosion or why the ladder collapsed, just as the *Ortiz* plaintiff did not know what caused the plastic injection molding machine to malfunction. But the plaintiff must have a contemporaneous awareness of the causal connection between the defendant's product as causing harm and the resulting injury to the close relative.

Fortman posits several hypothetical scenarios to advance her position, but only one involves a product-related injury: The plaintiff witnessed her husband having a seizure while he was behind the wheel of his car, and the plaintiff later learned his injuries were caused by an unspecified defective product. These broad hypothetical facts are patterned after those presented in this case. The hypothetical plaintiff has no contemporaneous awareness that her husband was being injured by a defective product; he might have suffered a stroke or a heart attack. Thus, the hypothetical plaintiff's emotional trauma derives from witnessing the injury, not the event that caused the injury. This hypothetical is in stark contrast to the wife in *Ortiz* who witnessed the event that caused the injury, that is, her husband being crushed by the defendant's product, or a bystander plaintiff who witnessed a ladder collapse and injure a close relative.

Fortman also contends that when weighing the competing public policies of limiting bystander recovery for NIED, and the policy imposing strict liability against the manufacturer of a defective product, this court should side with the policy imposing strict liability on manufacturers to permit

bystander recovery when the plaintiff observes injuries sustained by a close relative arising from an unobservable product failure. There is no need to choose one policy over the other. In *Thing*, the Supreme Court has chosen the elements that justify and simultaneously limit an award of damages for NIED. (*Thing, supra*, 48 Cal.3d at p. 667.) To hold product manufacturers strictly liable for emotional distress based on the bystander's perception of injuries caused by an unobservable product-related event would not be a choice of one policy over another. Rather, it would ignore the limits the Supreme Court has placed on bystander recovery.

### b. *The Second* Thing *Requirement Is Not Satisfied*

Unlike the plaintiffs in the fire and explosion cases, that is, *Wilks v. Hom, supra*, 2 Cal.App.4th 1264, *Zuniga v. Housing Authority, supra*, 41 Cal.App.4th 82, and *In re Air Crash Disaster Near Cerritos, California, supra*, 967 F.2d 1421, and the plaintiff who observed her husband being crushed by a faulty machine, that is, *Ortiz v. HPM Corp., supra*, 234 Cal.App.3d 178, this case falls into the *Golstein* category of cases in which the plaintiff has no meaningful comprehension of the injury-producing event. Fortman witnessed her brother's injury, but like the parents in *Golstein* who were unaware of the radiation overdose, Fortman had no contemporaneous awareness of the causal connection between the company's defective product and her brother's injuries. Months after the accident, Fortman learned that she had witnessed a product-related injury, not a heart attack.

Fortman maintains that her case is factually analogous to *Ortiz v. HPM Corp., supra*, 234 Cal.App.3d 178, in which the court rejected the "air-restriction-cannot-be-perceived" defense. The defense refers to an unobservable injury, not an unobservable injury-producing event. The wife in *Ortiz* saw the defendant's product crushing her husband's chest and also saw his injury, although she did not know the extent of his injuries. Fortman cites no facts that she observed Myers's regulator was the source of his distress.

Here, because Fortman did not have a contemporaneous sensory awareness of the causal connection between the company's defective product and the resulting injury, as a matter of law she has no viable NIED claim under the bystander theory of recovery. Therefore, summary judgment was properly granted.

As we have stated, under the current state of the law, Fortman cannot recover for NIED. But merely because the law denies compensation for Fortman's injury, it does not mean her emotional injury is any less grievous than that of a plaintiff who is allowed to obtain legal redress. To be sure, personally observing a loved one suffer injuries that result in his death can be

emotionally devastating, irrespective of whether one is contemporaneously aware of the precise etiology of the loved one's death. Nonetheless, *Thing* drew a line by limiting the class of potential plaintiffs in NIED cases, precluding recovery when the bystander lacks contemporaneous awareness of the injury-producing event. (*Thing, supra,* 48 Cal.3d at pp. 667–668.) The Supreme Court in *Thing* admittedly created an arbitrary restriction on bystander recovery, stating, "drawing arbitrary lines is unavoidable if we are to limit liability and establish meaningful rules for application by litigants and lower courts." (*Id.* at p. 666.) Unless and until the Supreme Court revisits *Thing*, it is binding on this court. (*Auto Equity Sales, Inc. v. Superior Court, supra,* 57 Cal.2d at p. 455.)

## DISPOSITION

The judgment is affirmed. Each party to bear its own costs on appeal.

Klein, P. J., and Croskey, J., concurred.

On February 7, 2013, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 27, 2013, S208602.