Filed 1/14/21 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DYANA KO et al., | B293672 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC665656) |
| v. | |
| MAXIM HEALTHCARE SERVICES, INC., et al., | ORDER MODIFYING OPINION |
| Defendants and Respondents. | NO CHANGE IN APPELLATE JUDGMENT |

THE COURT:*

The above-entitled opinion filed on December 23, 2020 is modified as follows:

On page 23, in footnote 12, delete the last sentence containing the quote from the Restatement and replace it with the following:

As the 2012 Restatement Third of Torts observed, "Beyond the question of what aspects of an accident must be perceived, [the Restatement] leaves for

future development whether the events must be perceived while the plaintiff is physically present or whether contemporaneous transmission by some medium is sufficiently equivalent to physical presence.  Continuing developments in communication technology will no doubt affect the determination."  (Rest.3d Torts (2012) § 48, comment e.)

There is no change in the appellate judgment.

---

\* PERLUSS, P. J.        FEUER, J.      RICHARDSON, J.\*\*

\*\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 12/23/20 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DYANA KO et al., | B293672 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC665656) |
| MAXIM HEALTHCARE SERVICES, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert B. Broadbelt III, Judge. Reversed and remanded with directions.

Law Offices of Steven P. Chang, Steven P. Chang, Gene H. Shioda and Heidi M. Cheng for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Jeffrey A. Miller, Wendy S. Dowse, Matthew S. Pascale, and Vijay J. Patèl for Defendant and Respondent Maxim Healthcare Services, Inc.

Beach Cowdrey Jenkins, Sean D. Cowdrey and Darryl C. Hottinger for Defendant and Respondent Thelma Manalastas.

Dyana and Christopher Ko[1] appeal from a judgment of dismissal entered after the trial court sustained without leave to amend the demurrers filed by defendants Maxim Healthcare Services, Inc. (Maxim), and Thelma Manalastas to the Kos' third amended complaint.  The Kos brought claims for negligence and negligent infliction of emotional distress (NIED) alleging Manalastas, a vocational nurse employed by Maxim who worked as an in-home caregiver for the Kos' disabled son Landon, abused Landon while the Kos were out of the house.  The Kos allege they witnessed Manalastas abuse Landon in real time as they watched the livestream of video and audio on Dyana's smartphone from a "nanny cam" in the home.[2]  The trial court ruled the Kos could not state a cause of action for NIED because they were not physically present when Landon was abused, and thus they could not satisfy the requirement established by the Supreme Court in *Thing v. La Chusa* (1989) 48 Cal.3d 644, 668 (*Thing*) that to recover on an NIED claim, a bystander plaintiff must be "present at the scene of the injury-producing event at the time it occurs and . . . then aware that it is causing injury to the victim."

On appeal the Kos contend their "virtual presence" during Landon's abuse through a real-time audiovisual connection satisfies the requirement in *Thing* of contemporaneous presence.

---

[1]  We refer to Dyana and Christopher Ko together as the Kos and to Dyana by her first name to avoid confusion.  We refer to the Kos' son Landon Ko as Landon.

[2]  A "livestream" refers to "a broadcast of a live event streamed over the Internet."  (Merriam-Webster's Online Dict. (2020) <https://www.merriam-webster.com/dictionary/ livestream> [as of Dec. 22, 2020], archived at <https://perma.cc/ 5FPP-E9UE>.)

We agree. In the three decades since the Supreme Court decided *Thing*, technology for virtual presence has developed dramatically, such that it is now common for families to experience events as they unfold through the livestreaming of video and audio. Recognition of an NIED claim where a person uses modern technology to contemporaneously perceive an event causing injury to a close family member is consistent with the Supreme Court's requirements for NIED liability and the court's desire to establish a bright-line test for bystander recovery.

We reverse the judgment of dismissal and remand for further proceedings.[3]

---

[3] We affirm the trial court's order sustaining Manalastas's demurrer to the Kos' third cause of action for negligence. The Kos have not presented any argument in their opening brief for reversal and have therefore forfeited the issue. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363 ["If a party's briefs do not provide legal argument and citation to authority on each point raised, "'the court may treat it as waived, and pass it without consideration.'""]; *Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296, fn. 7 ["Issues not raised in the appellant's opening brief are deemed waived or abandoned."].) Further, in their reply brief the Kos clarify that they appealed only with respect to whether under the Supreme Court's holding in *Thing* they can recover for emotional distress damages.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Incident*

In April 2017 Landon was two years old and had a genetic disorder called Rubinstein-Taybi Syndrome.[4]  Landon suffered from a number of health problems associated with the disorder, including blindness in one eye, an inability to walk, difficulty hearing, severe developmental delays, and the need for a feeding tube.  Landon required constant care and supervision.  The Kos, both of whom worked, had two other children, and they hired Maxim to provide in-home caretaking services for Landon for when they were at work or otherwise unavailable.  Manalastas was a California licensed vocational nurse employed by Maxim who was one of the caregivers Maxim provided to the Kos.  Manalastas was a caregiver for Landon for more than a year prior to the incident.  The Kos alleged on information and belief that Manalastas had a criminal record and Maxim failed to perform an adequate background check on her.

On April 22, 2017 the Kos took their two older children to a youth basketball tournament.  During the tournament Dyana "opened a phone application that allows her to live-stream video and audio from her home that is being shot in real time on a 'nanny cam.'"  Thereafter, the Kos "watched and heard in shock and horror, while the incident was happening in real time, as . . . Manalastas physically assaulted Landon by acts including hitting, slapping, pinching and shaking Landon in a violent manner."  The Kos called 911 to report the abuse, and police

---

[4]    The facts are taken from the operative third amended complaint.

4

officers were dispatched to the Kos' residence. The Kos drove home and showed the police officers video of Manalastas abusing Landon, leading to Manalastas's arrest. Dyana reported the abuse to Maxim, which reassigned Manalastas but did not terminate her.

The Kos allege on information and belief that Manalastas's abuse caused Landon to have one of his eyes surgically removed and other physical injuries. Landon passed away on April 24, 2018, during the pendency of this action.

### B.    *Procedural History*

The Kos filed this action on June 21, 2017 alleging on behalf of Landon claims for battery, assault, and negligence, and a claim for NIED on behalf of the Kos. After Landon passed away, the court granted the Kos leave to file a third amended complaint realleging the first two causes of actions for battery and assault as survivor claims on behalf of Landon's estate, the third cause of action for negligence on behalf of the Kos and Landon's estate, and their fourth cause of action for NIED. On June 21, 2018 the Kos filed the operative third amended complaint.

Maxim demurred to the fourth cause of action for NIED, and it filed a motion to strike all references to general damages and pain and suffering in the survivor causes of action pursuant to Code of Civil Procedure section 377.34.[5] Manalastas demurred

---

[5]    Code of Civil Procedure section 377.34 provides, "In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the

to the causes of action for NIED and negligence, and, similar to Maxim, moved to strike the allegations of Landon's pain and suffering.

After hearing argument, the trial court sustained Maxim's and Manalastas's demurrers and granted their motions to strike. The court found with respect to the Kos' fourth cause of action for NIED, citing to *Thing, supra*, 48 Cal.3d at page 668, that "it is required to follow existing case law, which provides that NIED bystander liability is limited to circumstances where a plaintiff is physically 'present at the scene of the injury producing event at the time it occurs.'" The court noted the "appellate courts have not defined what it means to be 'present at the scene' or the parameters of this element," and "[i]t is unclear how existing case law on NIED applies to existing technology, such as live-streaming video and audio on smart phones," but the "cases upholding NIED liability have only involved plaintiffs with some physical proximity to the injury-producing event at the time it occurred." The court suggested "[o]ne approach might be to deem [the presence] element satisfied as long as a plaintiff can show that he or she contemporaneously observed an injury-producing event at the time it occurred," but the court concluded "it is not this court's role to change, but instead to follow, existing law as stated by the California Supreme Court and the Court of Appeal." The court denied leave to amend, finding the Kos had failed to show how they could amend the complaint to state an NIED claim. The court also sustained without leave to amend Manalastas's demurrer to the third cause of action for negligence,

---

decedent sustained or incurred before death . . . and do not include damages for pain, suffering, or disfigurement."

finding Manalastas did not owe a duty to the Kos and the claim was merged into the Kos' NIED cause of action.

On August 28, 2018 the trial court entered an order sustaining without leave to amend defendants' demurrers to the fourth cause of action for NIED and Manalastas's demurrer to the Kos' third cause of action for negligence and granting the motions to strike. On November 2, 2018 the Kos filed a notice of appeal from a "[j]udgment of dismissal after an order sustaining a demurrer" and an order "[d]ismissing Plaintiffs' individual causes of action for negligence and/or negligent infliction of emotional distress." However the trial court had not yet entered a judgment or order of dismissal.

On November 10, 2020, at the request of the Kos, the clerk entered a dismissal without prejudice of their remaining third cause of action for negligence against Maxim. On the same date the trial court entered a judgment in favor of Maxim and Manalastas on the Kos' fourth cause of action for NIED and in favor of Manalastas on the Kos' third cause of action for negligence.[6] We consider the Kos' premature notice of appeal a valid "notice of appeal filed after judgment is rendered but before it is entered," and treat the notice as filed immediately after

---

[6]     The judgment is signed by Judge Deirdre Hill. On November 3, 2020 we issued an order directing the Kos to file with this court a file-stamped copy of a signed judgment or order of dismissal as to their claims against Maxim or Manalastas, or we would dismiss their appeal. On November 11 the Kos requested we take judicial notice of the November 10, 2020 judgment and voluntary dismissal of the Kos' third cause of action for negligence against Maxim. We grant the Kos' request pursuant to Evidence Code sections 452, subdivision (d), and 459, subdivision (a).

7

entry of judgment.  (Cal. Rules of Court, rule 8.104(d)(1); see
*Valdez v. Seidner-Miller, Inc*. (2019) 33 Cal.App.5th 600, 607.)

**DISCUSSION**

A.     *Standard of Review*

"In reviewing an order sustaining a demurrer, we examine
the operative complaint de novo to determine whether it alleges
facts sufficient to state a cause of action under any legal theory.
[Citation.]  Where the demurrer was sustained without leave to
amend, we consider whether the plaintiff could cure the defect by
an amendment." (*T.H. v. Novartis Pharmaceuticals Corp*. (2017)
4 Cal.5th 145, 162; accord, *Centinela Freeman Emergency
Medical Associates v. Health Net of California, Inc*. (2016)
1 Cal.5th 994, 1010.)  "In making this determination, we must
accept the facts pleaded as true and give the complaint a
reasonable interpretation." (*Mathews v. Becerra* (2019) 8 Cal.5th
756, 762; accord, *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.)  "A
judgment of dismissal after a demurrer has been sustained
without leave to amend will be affirmed if proper on any grounds
stated in the demurrer, whether or not the court acted on that
ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324; accord,
*Heshejin v. Rostami* (2020) 54 Cal.App.5th 984, 992.)

A trial court abuses its discretion by sustaining a demurrer
without leave to amend where "'there is a reasonable possibility
that the defect can be cured by amendment.'" (*Loeffler v. Target
Corp*. (2014) 58 Cal.4th 1081, 1100; accord, *City of Dinuba v.
County of Tulare* (2007) 41 Cal.4th 859, 865.)  "'The plaintiff has
the burden of proving that [an] amendment would cure the legal
defect, and may [even] meet this burden [for the first time] on

8

appeal.'" (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132; accord, *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971.)

B.    *Bystander NIED Claims*

1.    Dillon v. Legg *and its progeny*

The California Supreme Court first recognized a bystander's claim to recover emotional distress damages for injuries negligently caused to a family member in *Dillon v. Legg* (1968) 68 Cal.2d 728 (*Dillon*).  Prior to *Dillon*, "in negligence cases the right to recover for emotional distress had been limited to circumstances in which the victim was himself injured and emotional distress was a 'parasitic' item of damages, or if a plaintiff who had been in the 'zone of danger' did not suffer injury from impact, but did suffer physical injury as a result of the emotional trauma." (*Thing, supra*, 48 Cal.3d at p. 651; see *Amaya v. Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295, 302 (*Amaya*) [mother could not recover for physical injury caused by emotional shock from watching the driver of a delivery truck run over her 17-month-old son as she stood nearby and watched helplessly because she was not in the zone of danger], overruled by *Dillon*, at pp. 732-733.)

In *Dillon*, the Supreme Court overruled *Amaya*, and it held the plaintiff mother could recover for the emotional shock and physical injury resulting from watching the defendant negligently run over her young daughter who was crossing the street, where the mother was "'in close proximity to the . . . collision and personally witnessed said collision,'" although she was not within the zone of danger and did not fear for her own

9

safety.[7] (*Dillon, supra*, 68 Cal.2d at pp. 731-733.) The *Dillon* court rejected the premise of earlier opinions declining to recognize bystander NIED claims that allowing recovery would "invite fraudulent claims and it would involve the courts in the hopeless task of defining the extent of the tortfeasor's liability." (*Id.* at p. 730.) The court observed the law of torts would limit "the otherwise potentially infinite liability" that could result from allowing bystander NIED claims by holding a "defendant amenable only for injuries to others which to defendant at the time were reasonably foreseeable." (*Id.* at p. 739.)

The *Dillon* court acknowledged that determination of foreseeability would require a case-by-case analysis for which it could not establish an "immutable rule." (*Dillon, supra*, 68 Cal.2d at p. 740.) But the court enunciated three factors to guide the courts in determining reasonable foreseeability: "In determining . . . whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with

---

[7] *Dillon* concerned NIED claims by both the mother and sister of the victim. The trial court granted the defendant's motion for judgment on the pleadings as to the mother's emotional distress claim because she was not within the zone of danger, but it denied the motion as to the surviving sister's claim because she may have been within the zone of danger or feared for her own safety. (*Dillon, supra*, 68 Cal.2d at p. 732.)

10

learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship."[8] (*Id.* at pp. 740-741.)  With respect to the first two factors, the Supreme Court explained, "[T]he degree of foreseeability of the third person's injury is far greater in the case of his contemporaneous observance of the accident than that in which he subsequently learns of it.  The defendant is more likely to foresee that shock to the nearby, witnessing mother will cause physical harm than to anticipate that someone distant from the accident will suffer more than a temporary emotional reaction."  (*Id.* at p. 741.)

In the decades after *Dillon* was decided, the Supreme Court and Courts of Appeal recognized viable NIED claims in circumstances the Supreme Court in *Thing* later characterized as an "expansive progression" that "created more uncertainty." (*Thing, supra*, 48 Cal.3d at p. 656.)  In *Krouse v. Graham* (1977) 19 Cal.3d 59, 76 (*Krouse*), the Supreme Court held "the *Dillon*

---

[8]     The *Dillon* court limited its ruling to situations where, as alleged there, the plaintiff suffers physical harm from an emotional shock, explaining, "[W]e deal here with a case in which plaintiff suffered a shock which resulted in physical injury and we confine our ruling to that case."  (*Dillon, supra*, 68 Cal.2d at p. 740.)  In *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 929-930 the Supreme Court expanded liability, holding a plaintiff may recover for NIED absent any physical manifestation of emotional distress, reasoning, "[T]he attempted distinction between physical and psychological injury merely clouds the issue.  [W]hether the plaintiff has suffered a serious and compensable injury should not turn on this artificial and often arbitrary classification scheme."

11

requirement of 'sensory and contemporaneous observance of the accident' does not require a visual perception of the impact causing the death or injury." The court upheld a plaintiff husband's NIED claim where the defendant's car crashed into and killed the plaintiff's wife as she was unloading groceries from the family car and her husband sat in the driver's seat, explaining that "although [the husband] did not see [the wife] struck by defendant's automobile, he fully perceived the fact that she had been so struck, for he knew her position an instant before the impact, observed defendant's vehicle approach her at a high speed on a collision course, and realized that defendant's car must have struck her." (*Id.* at p. 76.)

The Supreme Court again clarified *Dillon*'s second factor of sensory and contemporaneous observance in *Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 167 (*Ochoa*), in which the court held the second factor did not bar NIED claims that do not involve the plaintiff's observation of a "sudden occurrence." The Supreme Court held the trial court erred in sustaining a demurrer to an NIED claim by a mother who watched her 13-year-old son suffer excruciating pain from negligent treatment of his pneumonia over several days in a juvenile detention facility. (*Id.* at pp. 163-164.) The court concluded, "We are satisfied that when there is observation of the defendant's conduct and the child's injury and contemporaneous awareness the defendant's conduct or lack thereof is causing harm to the child, recovery is permitted." (*Id.* at p. 170.)

The Supreme Court in *Thing* later described its holdings in *Krouse* and *Ochoa* as consistent with *Thing*'s revised requirements for bystander NIED claims. (*Thing, supra*, 48 Cal.3d at pp. 656, 660-661, 668.) But the *Thing* court

12

disapproved the post-*Dillon* Court of Appeal opinions in *Archibald v. Braverman* (1969) 275 Cal.App.2d 253 (*Archibald*) and *Nazaroff v. Superior Court* (1978) 80 Cal.App.3d 553 (*Nazaroff*). (*Thing*, at p. 668.) In *Archibald*, the Court of Appeal held a mother could pursue an NIED claim against defendants who provided to her 13-year-old son gunpowder that exploded and severely injured her son. (*Archibald,* at pp. 254-255.) The mother did not witness the explosion, but she appeared at the scene within "moments" of the explosion to render aid to her son, and upon observing his injuries, she suffered severe shock and mental illness. (*Id.* at p. 255.) The Court of Appeal reasoned the second *Dillon* factor of contemporaneous observance of the accident was met where the mother's shock was "fairly contemporaneous with the accident" although she was not present at the time of the accident. (*Id.* at p. 256.)

In *Nazaroff*, the Court of Appeal upheld a mother's NIED claim arising from the death of her three-year-old son where she realized the boy must have fallen into a neighbor's pool when she heard a neighbor scream her son's name, and as she ran to the pool, she saw her son being pulled from the water and given mouth-to-mouth resuscitation. (*Nazaroff, supra*, 80 Cal.App.3d at p. 559.) The Court of Appeal reasoned it was not necessary for the mother contemporaneously to observe the accident if she suffered "the direct emotional impact from the contemporaneous observation of the immediate consequences of the defendants' negligent act, which was the proximate cause of the injury and death of her son." (*Id*. at p. 566.)

13

2. Thing *and its progeny*

As discussed, the Supreme Court in *Thing, supra*, 48 Cal.3d at pages 656 to 657 expressed concern the *Dillon* guidelines had produced unpredictable outcomes and expanded liability to allow recovery for emotional distress in situations where plaintiffs were not present at the scene at the time of the accident, instead learning of their loved one's injury when they later arrived at the scene. The *Thing* court observed, "If the consequences of a negligent act are not limited an intolerable burden is placed on society. A 'bright line in this area of the law is essential.'" (*Thing*, at p. 664.)

The *Thing* court replaced the *Dillon* factors with three requirements to support a bystander NIED claim: "[A] plaintiff may recover damages for emotional distress caused by observing [a] negligently inflicted injury of a third person if, but only if, said plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress—a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances." (*Thing, supra*, 48 Cal.3d at pp. 667-668, fns. omitted.)

In adopting these requirements, the Supreme Court reasoned, relying on its earlier opinion in *Ochoa, supra*, 39 Cal.3d at page 165, footnote 6, "The impact of personally observing the injury-producing event in most, although concededly not all, cases distinguishes the plaintiff's resultant emotional distress from the emotion felt when one learns of the injury or death of a loved one from another, or observes pain and suffering but not

14

the traumatic cause of the injury.  Greater certainty and a more reasonable limit on the exposure to liability for negligent conduct is possible by limiting the right to recover for negligently caused emotional distress to plaintiffs who personally and contemporaneously perceive the injury-producing event and its traumatic consequences." (*Thing, supra*, 48 Cal.3d at p. 666.) Applying the three requirements, the *Thing* court concluded the plaintiff mother could not recover for NIED where she was nearby when her son was struck by a car, but first became aware of the accident when she arrived and saw him bloody and unconscious on the roadway.  (*Id.* at pp. 647-648, 669.)

The Supreme Court revisited the second *Thing* requirement of contemporaneous presence in *Bird v. Saenz* (2002) 28 Cal.4th 910 (*Bird*).  There, the Supreme Court held the adult daughters of a woman who suffered the negligent transection of an artery during a medical procedure could not maintain NIED claims against the mother's doctors because they were not present in the operating room and only learned of the accident when they were later told by another surgeon of the accident, even though they suffered emotional distress from learning their mother had suffered a possible stroke, seeing her rushed to surgery, and hearing an urgent call over the hospital loudspeaker for a thoracic surgeon.  (*Id.* at pp. 916-917.)  The court explained, "To be sure, *Thing*'s requirement that the plaintiff be contemporaneously *aware* of the injury-producing event has not been interpreted as requiring visual perception of an impact on the victim.  A plaintiff may recover based on an event perceived by other senses so long as the event is contemporaneously understood as causing injury to a close relative.  [Citation.]  [¶] But this slight degree of flexibility in the second *Thing*

15

requirement does not aid plaintiffs here because they had no sensory perception whatsoever of the transection at the time it occurred." (*Ibid.*; compare *Keys v. Alta Bates Summit Medical Center* (2015) 235 Cal.App.4th 484, 487, 490-491 [substantial evidence supported NIED judgment for sister and daughter of a surgery patient who observed the patient's inability to breathe following improper intubation].)

The Kos in their opening brief survey the Court of Appeal decisions over the last three decades that have construed the second *Thing* requirement.  The most analogous case is *Wilks v. Hom* (1992) 2 Cal.App.4th 1264, 1270-1272 (*Wilks*), which the Supreme Court cited with approval in *Bird, supra*, 28 Cal.4th at page 916.  In *Wilks*, a mother and her three young daughters were in their home when a gas explosion killed one daughter and severely burned another.  (*Wilks*, at p. 1267.)  The mother was not in the same room as the daughters when the explosion impacted them, but she was aware they were in their bedrooms when she experienced the force of the explosion and saw a bright flash from one of the girl's rooms, causing her to be "sensorially aware, in some important way, of the accident and the necessarily inflicted injury to her child." (*Id*. at p. 1271.)  The *Wilks* court concluded this was "sufficient to establish the requirement that she personally and contemporaneously perceived the injury-producing event and its traumatic consequences." (*Id*. at p. 1273.)

By contrast, in *Ra v. Superior Court* (2007) 154 Cal.App.4th 142, 144-145 (*Ra*), we concluded the plaintiff could not recover on her NIED claim arising from her emotional distress upon hearing a loud crash in a clothing store from the area where her husband was shopping, then learning a sign had fallen on his head.  We

16

concluded the plaintiff's "fear for her husband's safety at the time she heard the loud bang emanating from the part of the store where she knew he was shopping and her belief the possibility of his injury was more likely than not are insufficient as a matter of law to establish contemporaneous awareness of her husband's injuries at the time of the injury-producing accident within the meaning of" *Thing* and *Bird*. (*Ra*, at pp. 152-153; accord, *Fife v. Astenius* (1991) 232 Cal.App.3d 1090 [evidence plaintiffs heard the sounds and saw debris from an automobile collision outside their yard without realizing their sister had been injured until they reached the accident minutes later was insufficient to satisfy the second *Thing* requirement].)

Similarly, in *Fortman v. Förvaltningsbolaget Insulan AB* (2013) 212 Cal.App.4th 830, 832-834 (*Fortman*), the Court of Appeal concluded the sister of a deceased scuba diver could not recover NIED damages from the manufacturer of allegedly defective scuba diving equipment after she witnessed the death of her brother during a dive because she contemporaneously observed him falling unconscious but believed it was a heart attack, not the result of defective equipment. Surveying *Thing*, *Ochoa*, and *Dillon*, the court reasoned, "From these pertinent bystander cases, it is clear that to satisfy the second *Thing* requirement the plaintiff must experience a contemporaneous sensory awareness of the causal connection between the defendant's infliction of harm and the injuries suffered by the close relative." (*Fortman*, at p. 836; accord, *Golstein v. Superior Court* (1990) 223 Cal.App.3d 1415, 1427 [parents who watched as their son underwent radiation therapy but only later discovered he had been overexposed when he developed symptoms of radiation poisoning could not recover for NIED].)

17

C.     *The Kos Alleged Sufficient Facts To Constitute an NIED Claim Based on Their Virtual Contemporaneous Presence During Landon's Abuse*

The Kos urge us to interpret the second *Thing* factor requiring contemporaneous presence at the scene of an injury-producing event to include "virtual presence" in light of the technological advances that have occurred since *Thing* was decided 30 years ago.  Maxim and Manalastas argue for a narrower interpretation of presence, noting the Supreme Court and Courts of Appeal have never included within their description of presence the concept of virtual presence.[9]  At least not until now.  We find the Kos' argument persuasive.

We read the *Thing* requirement that a plaintiff be "present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim" (*Thing, supra*, 48 Cal.3d at p. 669) in light of the court's admonition that

---

[9]     Maxim argues the dictionary definition of "present" shows that a person must be physically present, but even the Merriam-Webster definition relied on by Maxim defines the adjective "present" to mean "being in view or at hand."  (See Merriam-Webster's Online Dict. (2020) <https://www.merriam-webster.com/dictionary/present> [as of Dec. 22, 2020], archived at <https://perma.cc/3CTG-M299>.)  Maxim's reliance on *In re J.G.* (2008) 159 Cal.App.4th 1056, 1065, is similarly misplaced.  The Court of Appeal there concluded an inmate had a right to be "'physically present'" at a parole hearing (instead of a telephonic appearance) where the Penal Code provided inmates had a right "'to be present'" and "'personally appear'" at all parole suitability hearings.  (*Ibid.*)  The statutory interpretation of the Penal Code provision at issue in *J.G.* is not before us.

18

recovery for NIED must be limited to "plaintiffs who personally and contemporaneously perceive the injury-producing event and its traumatic consequences." (*Id.* at p. 666.) The *Thing* court's effort to draw a bright line based on contemporaneous perception is illustrated by its failure to disapprove *Krouse, supra*, 19 Cal.3d 59, in which the husband was not physically present outside the car where his wife was killed, but he contemporaneously perceived that she had been struck by seeing the defendant's approaching car and knowing where his wife was positioned, and the court's disapproval of *Archibald, supra*, 275 Cal.App.2d at pages 254 to 255 and *Nazaroff, supra*, 80 Cal.App.3d at page 559, in which the parents only learned of the injuries to their children after the events (the explosion in *Archibald* and the son falling into the pool in *Nazaroff*). The *Bird* court's approval of *Wilks, supra*, 2 Cal.App.4th at page 1273 (see *Bird, supra*, 28 Cal.4th at pp. 916-917) is consistent with this bright line temporal distinction—in *Wilks*, as in *Krause*, the plaintiff mother was not present in the room where her daughters were impacted by the gas explosion, but she "personally and contemporaneously perceived the injury-producing event and its traumatic consequences." (*Wilks*, at p. 1273.)

We highlighted this distinction in *Ra, supra*, 154 Cal.App.4th at pages 152 to 153 in rejecting the wife's NIED claim because she lacked a "contemporaneous awareness of her husband's injuries at the time of the injury-producing accident" (the falling sign), even though she heard the bang from where her husband was shopping in the store and believed it was likely he had been injured. (See *Fortman, supra*, 212 Cal.App.4th at p. 836 ["From these pertinent bystander cases, it is clear that to satisfy the second *Thing* requirement the plaintiff must

19

experience a contemporaneous sensory awareness of the causal connection between the defendant's infliction of harm and the injuries suffered by the close relative."].)

Our interpretation of the second requirement in *Thing* to include virtual presence where there is a contemporaneous perception of the injury-producing event is consistent with allowing recovery for the parents here who observed the abuse of their child as it happened through a livestream feed from their nanny cam but denying recovery if the parents had walked into their home moments after the abuse and observed their injured son.[10]  As discussed, the *Thing* court emphasized that in most cases "[t]he impact of personally observing the injury-producing event . . . distinguishes the plaintiff's resultant emotional distress from the emotion felt when one learns of the injury or death of a loved one from another, or observes pain and suffering but not the traumatic cause of the injury."  (*Thing, supra*, 48 Cal.3d at p. 666.)

Maxim argues that "remote surveillance is nothing new, nor is watching events 'happening live with video and audio,'" and contends that "[i]ncreased convenience does not mean we are any more able to be present in places where our bodies are not than we were in 1989."  Maxim and Manalastas contend that technology allowed live broadcasts decades ago, pointing to the live broadcast of the fatal shooting of Lee Harvey Oswald in 1963, the 1986 televised explosion of the space shuttle Challenger, and the use of closed-circuit television in courtrooms prior to *Thing*.

---

[10]    Likewise, had the Kos observed the abuse of Landon by viewing a recording of the abuse only after it happened, they could not satisfy the requirement of contemporaneous perception of the injury-producing event.

But the Supreme Court in 1989 could not have reasonably anticipated the technological advances that now allow parents (and other family members) to have a contemporaneous sensory awareness of an event causing an injury to their child while not in physical proximity to the child. Certainly live television and remote video surveillance existed in 1989, but numerous technological, regulatory, and commercial developments in image capture (such as an Internet-enabled nanny cam), transmission (including the streaming of audiovisual data over the Internet and mobile data networks), and reception (such as on pocket-sized smartphones with high resolution screens) were necessary to create a world where parents could contemporaneously observe their at-home child while attending a basketball game. Indeed, the ubiquity of home surveillance systems and videoconferencing applications since the advent of Internet-enabled smartphones has manifestly changed the manner in which families spend time together and monitor their children. (See, e.g., *Riley v. California* (2014) 573 U.S. 373, 385 ["These cases require us to decide how the search incident to arrest doctrine applies to modern cell phones, which are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy. A smart phone of the sort taken from [the defendant] was unheard of ten years ago; a significant majority of American adults now own such phones. [Citation.] [Such] phones are based on technology nearly inconceivable just a few decades ago . . . ."].)[11]

_____

[11]    Manalastas argues that extending the second *Thing* requirement to allow virtual presence without physical presence would enable a plaintiff speaking on the telephone with the

In various areas of the law affecting traditional conceptions of physical presence, the courts have been called upon to interpret longstanding precedent in light of new technologies. For example, in *Kyllo v. U.S.* (2001) 533 U.S. 27, 40, the United States Supreme Court held that the use of a thermal-imaging camera "to explore details of the home that would previously have been unknowable without physical intrusion" constituted a search under the Fourth Amendment. (See *U.S. v. Jones* (2012) 565 U.S. 400, 404 ["the Government's installation of a [global positioning system] device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search'" (fn. omitted)]; *J.M. v. G.H.* (2014) 228 Cal.App.4th 925, 939 [upholding family court order authorizing a mother to move

---

victim during an injury-producing event to recover for NIED, even though the telephone was invented more than 100 years before *Thing*. But the question of auditory presence was not at issue in *Thing*, nor is it here. And certainly there may be circumstances where auditory presence is sufficient. As the Supreme Court acknowledged in *Bird, supra*, 28 Cal.4th at page 916, the second requirement in *Thing* of contemporaneous awareness "has not been interpreted as requiring visual perception of an impact on the victim." Manalastas alternatively posits that interpreting *Thing*'s requirements of presence at the scene to include virtual presence would allow parents to recover for NIED if they witness their child being injured during a sporting event broadcast live on television, a scenario that would have been possible when *Thing* was decided. That this hypothetical scenario was not addressed in *Thing* does not mean the Supreme Court would have drawn a line on NIED recovery based on whether the parents witnessed the injury on television rather than from the bleachers. This hypothetical scenario is likewise not before us.

abroad with her son, finding son's reduced time with his father and stepbrother would be "mitigated by . . . the ability to communicate electronically"]; *In re Marriage of Lasich* (2002) 99 Cal.App.4th 702, 711, disapproved on another ground by *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1097 [approving mother's return to her native country with children, noting that in addition to summer and holiday visits for father, mother would "furnish both father and the minors with computer equipment, 'net-meeting' software, Internet service, and training for father and the minors to video-conference at least twice a week"].)[12]

Where plaintiffs allege they were virtually present at the scene of an injury-producing event sufficient for them to have a

---

[12] Maxim and Manalastas rely on the Indiana Supreme Court's decision in *Clifton v. McCammack* (Ind. 2015) 43 N.E.3d 213, 215, in which the court held the plaintiff father could not recover for NIED where he watched a television news story about a fatal car crash near his home and feared his son was involved. But in *Clifton*, as in *Bird, supra,* 28 Cal.4th at pages 921 to 922 and *Ra, supra,* 154 Cal.App.4th at pages 144 to 145, the father did not learn that his son had been injured until after he arrived on the scene 40 minutes after the accident. (*Clifton*, at p. 220.) We are not aware of any case in California or elsewhere addressing an NIED claim brought by a plaintiff who was contemporaneously aware of an injury-causing event through only a virtual presence. As the editors of the 2012 Restatement Third of Torts observed, "Beyond the question of what aspects of an accident must be perceived, [the Restatement] leaves for future development whether the events must be perceived while the plaintiff is physically present or whether contemporaneous transmission by some medium is sufficiently equivalent to physical presence. Continuing developments in communication technology will no doubt affect the determination." (Rest.3d Torts (2012) § 48.)

contemporaneous sensory awareness of the event causing injury to their loved one, they satisfy the second *Thing* requirement to state a cause of action for NIED. Just as the Supreme Court has ruled a "plaintiff may recover based on an event perceived by other senses so long as the event is contemporaneously understood as causing injury to a close relative" (*Bird, supra*, 28 Cal.4th at p. 916), so too can the Kos pursue an NIED claim where, as alleged, they contemporaneously saw and heard Landon's abuse, but with their senses technologically extended beyond the walls of their home.

Here, as alleged, the Kos were virtually present through modern technology that streamed the audio and video on which they watched Manalastas assaulting Landon in real time, and thus "personally and contemporaneously perceive[d] the injury-producing event and its traumatic consequences." (*Thing, supra*, 48 Cal.3d at p. 666.) Based on these allegations, the Kos have stated facts sufficient to constitute a cause of action for NIED. (*Thing, supra*, 48 Cal.3d at pp. 666, 668.)

## DISPOSITION

The judgment is reversed. The matter is remanded with directions to the trial court to vacate its order sustaining without leave to amend Maxim's demurrer to the fourth cause of action and Manalastas's demurrer to the third and fourth causes of action and to enter a new order overruling the demurrers to the fourth cause of action and sustaining Manalastas's demurrer to the third cause of action without leave to amend. The Kos are to recover their costs on appeal.

24

                                        FEUER, J.

    We concur:


        PERLUSS, P. J.


        RICHARDSON, J.[*]

_____

[*]     Judge of the Los Angeles Superior Court, assigned by the
Chief Justice pursuant to article VI, section 6 of the California
Constitution.


                    25