# IN THE SUPREME COURT OF CALIFORNIA

JAYDE DOWNEY,
Plaintiff and Appellant,

v.

CITY OF RIVERSIDE et al.,
Defendants and Appellants.

S280322

Fourth Appellate District, Division One
D080377

Riverside County Superior Court
RIC1905830

July 22, 2024

Justice Kruger authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Groban, Jenkins, and Evans concurred.

DOWNEY v. CITY OF RIVERSIDE

S280322


Opinion of the Court by Kruger, J.


Since *Dillon v. Legg* (1968) 68 Cal.2d 728 (*Dillon*), California courts have recognized a plaintiff's right to recover in negligence for serious emotional distress suffered as a result of witnessing injuries inflicted on a close relative. Recovery for negligent infliction of emotional distress is available, however, only if the plaintiff "is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim." (*Thing v. La Chusa* (1989) 48 Cal.3d 644, 668 (*Thing*).)

In the prototypical case, exemplified by the facts of *Dillon*, a parent watches as a negligent driver collides with her child. The parent, who is contemporaneously aware of both the driver's negligent conduct and the child's resulting injury, is permitted to sue the driver for her emotional trauma. The facts of this case require us to consider a new question about emotional distress recovery: What if the plaintiff is aware that injury has been inflicted on the victim, but not of the defendant's role in causing the injury?

Plaintiff Jayde Downey was giving driving directions to her daughter over cell phone when her daughter was severely injured in a car crash. Downey heard the collision and its immediate aftermath, but she could not see what had caused it. She claims that the fault lies partially with individuals and entities responsible for the condition of the roadway where the

crash occurred and has sued them for negligent infliction of emotional distress. The Court of Appeal concluded, however, that Downey was not entitled to recover emotional distress damages against these defendants unless at the time of the crash she was aware of a causal connection between her daughter's injuries and the defendants' alleged negligence in maintaining the intersection.

We conclude this was error. For purposes of clearing the awareness threshold for emotional distress recovery, it is awareness of an event that is injuring the victim — not awareness of the defendant's role in causing the injury — that matters. In some cases, as in *Dillon*, these two things may be effectively the same. In many medical malpractice cases, for instance, a bystander ordinarily will not be aware that injury is being inflicted on the victim without also being aware that medical practitioners are, through their deficient care, causing harm. But when a bystander witnesses what any layperson would understand to be an injury-producing event — such as a car accident, explosion, or fire — the bystander may bring a claim for negligent infliction of emotional distress based on the emotional trauma of witnessing injuries inflicted on a close relative. This is true even if the bystander was not aware at the time of the role the defendant played in causing the victim's injury.

## I.

Jayde Downey's daughter, Malyah Jane Vance, was driving near the intersection of Canyon Crest Drive and Via Zapata in the City of Riverside when her vehicle was struck by

another car.[1]  Vance was seriously injured as a result of the collision.

At the time of the collision, Downey was talking to Vance by cell phone to give her driving directions to an office close to the intersection.  On her end of the line, Downey heard Vance suddenly gasp, then say "Oh!" in fear or shock.  A split second later, Downey heard the sounds of an explosive metal-on-metal vehicular crash, shattering glass, and rubber tires skidding or dragging across asphalt.  Downey knew from the sounds she heard that Vance had been involved in a car crash.  As the sound of tires dragging across asphalt faded, Downey — having heard no sounds or vocalizations from Vance — understood that Vance was injured so seriously that she could not speak.  This was confirmed by a stranger who rushed to the scene to help and told Downey over the phone to quiet down so that he could "find a pulse."

After the crash, Downey and Vance sued the driver of the other car involved in the collision.  They also sued the City of Riverside and Ara and Vahram Sevacherian, the owners of private property adjacent to the intersection where the crash occurred.  Among other things, their complaint sought recovery for negligent infliction of emotional distress on Downey, who suffered emotional trauma as a result of hearing her daughter's accident occur in real time.  Downey alleged the City was at least in part responsible for the accident, and thus for Downey's

---

[1]  We take the facts from the opinion of the Court of Appeal. (*Downey v. City of Riverside* (2023) 90 Cal.App.5th 1033, 1040–1043 (*Downey*).)  Like the Court of Appeal, we accept as true the well-pleaded facts in the operative third amended complaint. (*Id.* at p. 1040, citing *Zolly v. City of Oakland* (2022) 13 Cal.5th 780, 786.)

emotional distress, because "[t]he traffic markings, signals, warnings, medians, and fixtures thereon (or lack thereof), were so located constructed, placed, designed, repaired, maintained, used, and otherwise defective in design, manufacture and warning that they constituted a dangerous condition of public property" that "created an unreasonable and foreseeable risk of injury and harm to occupants of vehicles in the intersection." Downey alleged the Sevacherians, too, contributed to the accident by failing to trim vegetation on their property, which had obstructed the view of traffic turning from Via Zapata onto Canyon Crest Drive.

The City and the Sevacherians demurred to the complaint. They argued that Downey could not allege a negligent infliction of emotional distress claim against them because at the time of the collision she was not aware of how their alleged negligence had caused the collision. Agreeing with the defendants, the trial court sustained the demurrers without leave to amend. It explained that the complaint's allegations were "insufficient to show that Downey had a contemporaneous awareness of the injury-producing event — not just the harm Vance suffered, but also the causal connection between defendants' tortious conduct and the injuries Vance suffered."

On appeal, Downey argued that it was unnecessary for her to show contemporaneous awareness of the defendants' tortious conduct to state a claim for negligent infliction of emotional distress. In a divided decision, the Court of Appeal rejected the argument. (*Downey, supra,* 90 Cal.App.5th at pp. 1054–1055, 1057.)

The majority relied in large part on this court's decision in *Bird v. Saenz* (2002) 28 Cal.4th 910 (*Bird*). In *Bird,* the

4

plaintiffs' mother, a cancer patient, had been injured when her artery was transected during surgery and her doctors did not diagnose or treat the damaged artery right away. (*Id.* at pp. 912–914, 916–917.) Because the plaintiffs had not witnessed the injury-causing events — the transection of their mother's artery and the physicians' subsequent failures to diagnose and treat the damaged artery — but claimed only to have perceived its consequences — her suffering from the internal bleeding — we declined to impose liability for negligent infliction of emotional distress based on the physicians' alleged malpractice. Such liability will not lie "based on nothing more than a bystander's 'observation of *the results* of the defendant's infliction of harm,' however 'direct and contemporaneous.' " (*Id.* at p. 921, quoting *Mobaldi v. Regents of University of California* (1976) 55 Cal.App.3d 573, 583.)

Likening this case to *Bird*, the Court of Appeal majority concluded that Downey failed to allege facts sufficient to make out a claim for negligent infliction of emotional distress because she had not alleged that she was contemporaneously aware that the City's and the Sevacherians' "acts or omissions with respect to the traffic markings at the intersection or landscaping of surrounding property caused the accident or injured Vance." (*Downey, supra,* 90 Cal.App.5th at p. 1055.) Like the *Bird* plaintiffs, Downey was aware only of the "*result* or *consequence*" of the defendants' alleged injury-causing conduct, not the conduct itself. (*Ibid.*) That was not enough to "state a negligent infliction of emotional distress cause of action." (*Id.* at p. 1056.) Based on Downey's representations at oral argument, however, the majority concluded that she should be granted leave to attempt to "allege additional facts establishing that she had familiarity with, and knowledge and awareness of, the

intersection and the dangerous conditions created by" the defendants. (*Id.* at p. 1057.) The majority otherwise affirmed the trial court's decision sustaining the defendants' demurrers.[2]

In a concurring and dissenting opinion, Justice Dato disagreed that Downey was required to plead or prove that she was "aware of each and every separate act of negligence that may have contributed to the accident." (*Downey, supra,* 90 Cal.App.5th at p. 1058 (conc. & dis. opn. of Dato, J.); see *id.* at p. 1057 (conc. & dis. opn. of Dato, J.).) In Justice Dato's view, a plaintiff seeking bystander distress recovery needs to show contemporaneous awareness of the injury-causing event and that it is causing injury to the victim, but does not necessarily need to understand that the defendant's conduct is causing the injury. (*Id.* at pp. 1059–1063 (conc. & dis. opn. of Dato, J.).)

We granted review to address this question of statewide importance that divided the Court of Appeal.

## II.

## A.

Negligent infliction of emotional distress " 'is not an independent tort, but the tort of *negligence,*' " to which " 'traditional elements of duty, breach of duty, causation, and damages apply.' " (*Burgess v. Superior Court* (1992) 2 Cal.4th

---

[2] The majority also held that Downey adequately alleged that she was "present" at the scene and that she had contemporaneous awareness of both the accident and the fact that Vance was injured because she heard the accident and its immediate aftermath over the phone. (*Downey, supra,* 90 Cal.App.5th at p. 1052; see *id.* at p. 1053.) These conclusions have not been challenged here and we express no view on them.

1064, 1072, quoting *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588.)

Although negligent infliction of emotional distress is a species of the long-established tort of negligence, its origins are considerably more recent. As we have previously explained, the recognition of a bystander's claim for the negligent infliction of emotional distress was the outgrowth of two significant developments in California tort law. (See generally *Thing*, *supra*, 48 Cal.3d at pp. 648–655.) The first development was the recognition of the infliction of emotional distress as a discrete tort cause of action in *State Rubbish etc. Assn. v. Siliznoff* (1952) 38 Cal.2d 330, a case concerning a claim for recovery for intentional threats causing emotional distress but producing no physical harm. Although the law had previously recognized emotional distress as a significant component of a plaintiff's damages for various established torts such as assault and false imprisonment, the court in *Siliznoff* for the first time "accepted both freedom from emotional distress as an interest worthy of protection in its own right, and the proposition that it is possible to quantify and compensate for the invasion of that interest," even when unaccompanied by physical harm. (*Thing*, at p. 650.)

The second development concerned the treatment of emotional distress claims in cases involving negligence — particularly in cases involving emotional harms resulting from negligently inflicted physical injury to another. For many years, even after *Siliznoff* was decided, the " ' "general rule" ' " in California was that " ' "no recovery is permitted for a mental or emotional disturbance, or for a bodily injury or illness resulting therefrom, in the absence of a contemporaneous bodily contact or independent cause of action, or an element of wilfulness, wantonness, or maliciousness, in cases in which there is no

injury other than one to a third person, even though recovery would have been permitted had the wrong been directed against the plaintiff." ' " (*Thing, supra,* 48 Cal.3d at p. 651, quoting *Amaya v. Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295, 302–303 (*Amaya*); see also *Reed v. Moore* (1957) 156 Cal.App.2d 43, 45–46 [same].) Unless the plaintiff personally suffered bodily injury as a result of the defendant's negligence or was in the " 'zone of danger' " and suffered physical injury as a result of emotional trauma, damages for emotional distress were not recoverable in negligence actions. (*Thing,* at p. 651.)

This general rule significantly limited the recovery available for " ' "mental or emotional disturbances caused by another's danger, or sympathy for another's suffering" ' " when that suffering was negligently inflicted. (*Thing, supra,* 48 Cal.3d at p. 651.) Plaintiffs traumatized by having witnessed a loved one being injured or killed in an accident could recover for the trauma only if the plaintiffs were also physically injured, or else were so close to the accident that they feared for their own safety. (See *Amaya, supra,* 59 Cal.2d at p. 302.) Although we acknowledged the plaintiffs' legitimate interest in protection from severe mental disturbances, we declined to recognize a claim for emotional distress damages in negligence actions, fearing that the consequence would be to create a "fantastic realm of infinite liability." (*Id.* at p. 315; see *id.* at pp. 310–315.)

We reconsidered this approach in our seminal decision in *Dillon.* Overturning *Amaya, Dillon* broke new ground by permitting a plaintiff to recover for negligent infliction of emotional distress caused by witnessing an accident that fatally injured her child, even though the plaintiff herself was not within the "zone of physical impact" or "zone of danger." (*Dillon, supra,* 68 Cal.2d at p. 732; see *id.* at pp. 746–748.) We held that

regardless of whether the mother was so close to the accident as to fear for her own safety, she should still be able to recover damages for her "emotional trauma at the witnessed death of her child." (*Id.* at p. 747.) As a result of *Dillon*, the law in California — and now elsewhere[3] — recognizes that bystanders who witness a close relative being negligently injured have a cause of action for negligence and may recover damages for their trauma.[4]

But even though *Dillon* broadened emotional distress liability to permit safely located bystanders to an accident to recover based on their fear and shock when their close relatives suffer injury, it also recognized that "lines of demarcation" would have to be drawn "to limit the otherwise potentially infinite liability which would follow every negligent act." (*Dillon, supra,* 68 Cal.2d at pp. 741, 739.) Pointing to one such line, *Dillon* instructed courts to consider, among other things, "[w]hether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence." (*Id.* at pp. 740–741.)

---

[3] The Restatement Third of Torts credits *Dillon* as the first case in the United States to allow close relative bystanders outside the " 'zone of danger' " to recover emotional distress damages, and reports that "[m]ost American courts have now adopted some version of" the *Dillon* rule. (Rest.3d Torts, Liability for Physical and Emotional Harm, § 48, com. a, p. 200.)

[4] At first, we deemed only mental distress that ripened into physical injury or symptoms compensable, but we later dispensed with this requirement as an illogical anachronism. (*Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 919.)

In several cases after *Dillon*, we further explored this limit on the duty owed by tortfeasors to bystanders who suffer serious emotional distress after witnessing a close relative being injured.

We first considered *Dillon*'s "sensory and contemporaneous observance" factor in *Justus v. Atchison* (1977) 19 Cal.3d 564, a medical malpractice case. The plaintiffs in *Justus* were two husbands who alleged, in separate actions, that they saw their wives deliver stillborn fetuses and suffered emotional distress from witnessing the stillbirths. (*Id.* at pp. 567–569, 585.) We concluded that the husbands had failed to state a cause of action under *Dillon* because they had not understood what they had seen until a doctor told them. Because each plaintiff's emotional distress derived not from what he witnessed during the delivery, but "from what he was told after the fact," we held that the plaintiffs had failed to allege "shock . . . result[ing] from a 'direct emotional impact' on the plaintiff caused by 'sensory and contemporaneous observance of the accident.' " (*Justus*, at pp. 585, 584, quoting *Dillon*, *supra*, 68 Cal.2d at p. 740.)

We again considered this factor in *Ochoa v. Superior Court* (1985) 39 Cal.3d 159 (*Ochoa*). There, the plaintiff was a mother whose teenage son had died of bilateral pneumonia while detained in juvenile hall. (*Id.* at pp. 162–163.) She had visited her son in the infirmary, where she saw him "going into convulsions and . . . hallucinating" and heard him when he "complained of feeling very sick and of feeling pain." (*Id.* at p. 163.) The mother repeatedly pleaded with the attending physician at the juvenile hall infirmary to allow her son to be seen by the family doctor, but her requests were denied. (*Id.* at pp. 163–164.) When she visited him a second time and tried to

roll him over on his side, he "yelled and screamed, complaining of excruciating pain in his chest area." (*Id.* at p. 164.) During both visits, the mother "was distressed because of her son's condition and because it appeared that her child's medical needs were being ignored"; no doctor tended to her son while she was at the infirmary. (*Ibid.*) Disapproving cases limiting recovery to emotional distress caused by a " 'sudden and brief' " injury-causing event, we held that the mother had stated a claim for negligent infliction of emotional distress. (*Id.* at p. 167; see *id.* at p. 168, disapproving *Jansen v. Children's Hospital Medical Center* (1973) 31 Cal.App.3d 22, 24.) We explained that "when there is observation of the defendant's conduct and the child's injury and contemporaneous awareness the defendant's conduct or lack thereof is causing harm to the child, recovery is permitted," regardless of whether the injury was inflicted suddenly or across several days. (*Ochoa*, at p. 170.)

We returned once more to the subject of bystander distress liability in *Thing, supra,* 48 Cal.3d 644. In *Thing*, a mother sought emotional distress damages caused by witnessing her injured son lying in a roadway after a car accident, although she had not seen or heard the accident itself. We granted review to consider the discrete question whether, as some courts had understood *Ochoa* to hold, "contemporaneous awareness of a sudden occurrence causing injury to [the plaintiff's] child was not a prerequisite to recovery under *Dillon*." (*Thing*, at p. 648.) But we also took the opportunity to take stock of the general state of the law two decades after *Dillon*. We observed that the *Dillon* majority's anticipation "that the parameters of the tort would be further defined in future cases" had gone unfulfilled, and subsequent appellate cases had only created "more uncertainty." (*Id.* at p. 656.) Decisions following *Dillon* had,

"like the pebble cast into the pond," expanded the bystander distress claim and "created ever widening circles of liability." (*Id.* at p. 653; see *id.* at p. 656 [discussing the "expansive progression" of post-*Dillon* decisions].) Clearly articulated limits were necessary, we explained, "[i]n order to avoid limitless liability out of all proportion to the degree of a defendant's negligence, and against which it is impossible to insure without imposing unacceptable costs on those among whom the risk is spread." (*Id.* at p. 664.)

To fill this gap, *Thing* articulated three essential limits on a bystander's recovery for negligently caused emotional distress. These limits refined the guidelines that we had set out in *Dillon*, including its focus on the plaintiff's sensory and contemporaneous observance of the injury-producing event. "[A] plaintiff," we said, "may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person if, but only if, said plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress — a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances." (*Thing, supra,* 48 Cal.3d at pp. 667–668, fns. omitted.) Applying these limits, we held that the mother who had not witnessed her son being struck by a car could not recover emotional distress damages because she could not satisfy the second requirement. (*Id.* at pp. 647–648; see *id.* at p. 669.)

## B.

This case likewise turns on the second *Thing* requirement, that the bystander plaintiff be "present at the scene of the injury-producing event at the time it occurs and [be] then aware that it is causing injury to the victim." (*Thing*, *supra*, 48 Cal.3d at p. 668.) The question is whether, to satisfy this requirement, the plaintiff must understand not only that a close relative is suffering injury, but also that the defendant's negligent conduct or omissions have caused the injury.[5]

The focal point of the dispute is *Bird*, *supra*, 28 Cal.4th 910, so we will begin there. As noted earlier, *Bird* was a medical malpractice case brought by the children of a cancer patient who had sustained damage to her artery during surgery. The plaintiffs sought damages for the emotional trauma they experienced as a result of seeing their mother's physical distress, which they alleged had resulted from physicians' negligent transection of her artery during surgery and the physicians' failure to immediately diagnose and treat the

---

[5] In answering the question presented, we emphasize that *Thing*'s requirements pertain to just one element of the negligence claim, which is the scope of the duty that an alleged tortfeasor owes to relatives of a victim who suffer emotional distress upon observing an event that injures the victim. A plaintiff who can satisfy *Thing*'s requirements will not prevail unless the plaintiff proves not only that the defendant owed the plaintiff a duty but also that the defendant's breach of that duty caused the plaintiff's damages. Whether Downey can prove all the elements of her negligence claims against the City and the Sevacherians is beyond the scope of our opinion, which addresses only whether Downey's allegations are sufficient to satisfy *Thing*'s " 'contemporaneous awareness' " requirement at the pleading stage. (*Thing*, *supra*, 48 Cal.3d at p. 661, quoting *Ochoa*, *supra*, 39 Cal.3d at p. 170.)

damaged artery thereafter. (*Id.* at p. 917.) We concluded that the plaintiffs could not recover for emotional distress caused by the transection of the artery because they were not in the operating room to witness it. (*Id.* at pp. 916–917, 921–922.) Nor could they recover for emotional distress caused by the physicians' alleged failure to immediately diagnose and treat the damaged artery because "plaintiffs could not meaningfully have perceived any such failure." (*Id.* at p. 917.)

We observed that both before and after *Thing*, courts considering bystander emotional distress claims "based on alleged medical negligence . . . have not found a layperson's observation of medical procedures to satisfy the requirement of contemporary awareness of the injury-producing event." (*Bird*, *supra*, 28 Cal.4th at pp. 917–918; see *id.* at pp. 917–921.)[6] We drew on *Golstein v. Superior Court* (1990) 223 Cal.App.3d 1415 (*Golstein*) as "[t]he leading case on point." (*Bird*, at p. 918.) In *Golstein*, the plaintiffs were parents who had watched their son, who was being treated for a curable cancer, receive what turned out to be a lethal dose of radiation during radiation therapy. Although they had observed the procedure, they did not then realize that it was inflicting what would prove to be fatal harm. The Court of Appeal in *Golstein* denied recovery, reasoning that "understanding perception of the injury-causing event is an essential component of *Dillon* recovery. In the case of an event which cannot be perceived, distress recovery is not allowed." (*Golstein*, at p. 1427; accord, *Bird*, at p. 918.) We also cited with

---

[6] We identified and disapproved the lone exception, the pre-*Thing* decision in *Mobaldi v. Regents of University of California*, *supra*, 55 Cal.App.3d 573. (See *Bird*, *supra*, 28 Cal.4th at pp. 920–921.)

approval *Wright v. City of Los Angeles* (1990) 219 Cal.App.3d 318, where "a relative who watched a paramedic conduct a cursory medical examination that failed to detect signs of sickle cell shock was permitted to sue for wrongful death but not for [negligent infliction of emotional distress]." (*Bird*, at p. 919.) "While the relative was 'present at the scene at the time the injury-producing event occurred,' there was no evidence 'he was *then* aware [that the decedent] was being injured by [the paramedic's] negligent conduct.'" (*Ibid.*, quoting *Wright*, at p. 350.)

We explained that, as *Golstein* and other medical malpractice cases illustrated, recovery for negligent infliction of emotional distress in such cases will be available only rarely because even a plaintiff present during the medical treatment of a close relative generally will not be able to show a contemporaneous awareness that a physician's allegedly negligent conduct is causing harm: "Except in the most obvious cases, a misdiagnosis is beyond the awareness of lay bystanders." (*Bird*, *supra*, 28 Cal.4th at p. 917.) Unlike catastrophic events like "'an explosion, traffic accident, or electrocution,'" negligent medical treatment is an "'injury-causing event'" that, because it ordinarily remains "'essentially invisible to the plaintiff'" as it occurs, is not ordinarily "'a component of her emotional trauma.'" (*Id.* at p. 921, quoting *Golstein*, *supra*, 223 Cal.App.3d at p. 1423.) Allowing recovery for "unperceived medical errors hidden in a course of treatment," we explained, "cannot be reconciled with *Thing*'s requirement that the plaintiff be aware of the connection between the injury-producing event and the injury." (*Bird*, at p. 921.)

*Bird* clearly settled this much: There can be no recovery for emotional distress caused by the negligent infliction of injury on a third party unless the plaintiff contemporaneously understands that the injury-causing event is in fact causing injury to the victim. As the Court of Appeal majority noted, however, at various places *Bird* suggests that the focal point of this inquiry is, more specifically, on the tortious act causing the injury. (*Downey*, *supra*, 90 Cal.App.5th at p. 1053.) For instance, in *Bird* we quoted a passage from *Golstein* that refers to " '[t]he actual negligent act' " and " 'the injury-causing event' " interchangeably. (*Bird*, *supra*, 28 Cal.4th at p. 921, quoting *Golstein*, *supra*, 223 Cal.App.3d at p. 1423.) We also approvingly quoted a passage stating that *Thing* required plaintiffs to " 'experience a contemporaneous sensory awareness of the causal connection between the negligent conduct and the resulting injury.' " (*Bird*, at p. 918, quoting *Golstein*, at p. 1427.)[7] And we restated our conclusion in *Ochoa* that " 'when there is observation of the defendant's conduct and the child's injury *and contemporaneous awareness the defendant's conduct or lack thereof is causing harm* to the child, recovery is permitted.' " (*Bird*, at p. 919, quoting *Ochoa*, *supra*, 39 Cal.3d at p. 170, italics added by *Bird*.) *Bird*'s discussion of an example

---

[7] As the Court of Appeal majority here observed, we did clearly recognize in *Bird* a distinction between " 'awareness of negligence, a legal conclusion, with contemporaneous, understanding awareness of the event as causing harm to the victim.' " (*Downey*, *supra*, 90 Cal.App.5th at p. 1048, quoting *Bird*, *supra*, 28 Cal.4th at p. 920.) The Court of Appeal understood *Bird* to require awareness of a defendant's *conduct* that is negligent as a legal matter, but it did not understand *Bird* to require awareness *that* the defendant's conduct is negligent as a legal matter. (*Downey*, at p. 1048.)

borrowed from *Mobaldi v. Regents of University of California*, *supra*, 55 Cal.App.3d 573, involving a parent who witnesses a "fatal traffic accident" and "knows the driver's conduct has killed [her] child, even though she may not know the driver was drunk," was similarly trained on the plaintiff's perception of the defendant's tortious conduct. (*Bird*, at pp. 920–921.)

Understood in context, however, these statements do not stand for the broad proposition that bystander plaintiffs cannot recover for their emotional distress unless they contemporaneously both perceive the injury-causing event and understand the defendant's role in causing the injury. To take this broad lesson from *Bird* would suggest a departure from *Thing*, which had not set out any such limitation. In *Thing*, we focused on "the traumatic emotional effect on the plaintiff who contemporaneously observes both the event *or* conduct that causes serious injury to a close relative and the injury itself." (*Thing*, *supra*, 48 Cal.3d at p. 667, italics added.) As Justice Dato observed in his partial dissent in the Court of Appeal, this disjunctive phrasing strongly suggests that it is enough if a bystander plaintiff perceives an accident and contemporaneously understands that it has injured a close relative; the plaintiff "need not also be aware of the underlying negligent cause." (*Downey*, *supra*, 90 Cal.App.5th at p. 1061 (conc. & dis. opn. of Dato, J.).) In *Thing*, the plaintiff was not allowed to recover because she had perceived *neither* the event *nor* the defendant's injurious conduct.

*Bird* did not purport to reexamine or call into question *Thing*'s suggestion that an understanding perception of either the injury-producing event or the conduct that caused the victim's injury is enough to satisfy its second requirement, nor did it otherwise squarely address the question that is now before

us. This is no surprise, for the issue was not squarely presented. *Bird* — like *Golstein* before it — was a medical malpractice case. Those cases referred interchangeably to " 'the injury-causing event' " and " '[t]he actual negligent act' " because there was no question that the injury-causing events *were* the defendants' act of medical negligence. (*Bird, supra,* 28 Cal.4th at p. 921, quoting *Golstein, supra,* 223 Cal.App.3d at p. 1423.) In *Bird,* the injury-causing events were the physicians' transection of the artery and their failure to immediately diagnose and treat it; in *Golstein,* the injury-causing event was medical personnel's delivery of a lethal dose of radiation. Neither case raised any question about awareness of injury without awareness of the role the defendant played in causing the injury. The critical issue in both cases, rather, concerned lack of contemporaneous awareness of *either* injury *or* the defendant's role in it.

*Bird* placed particular emphasis on how difficult — often impossible — it generally is for laypersons to recognize in the moment that a course of medical treatment is causing injury. Even when plaintiffs are present at the scene of the injury-causing event and observe conduct that they later realize caused injury to a close relative, their lack of medical knowledge will ordinarily keep them from being " 'then aware that it [was] causing injury to the victim.' (*Thing, supra,* 48 Cal.3d [at p.] 668.)" (*Bird, supra,* 28 Cal.4th at p. 922; but cf. *id.* at p. 918 [suggesting that some extreme cases of medical malpractice, such as a mistaken amputation, might be easily recognized as malpractice].) In such cases, the injury-causing events or conduct are not traumatizing because they are perceived as injury-causing only in retrospect, when the observer is affected by the event's results. (See *id.* at p. 921.)

*Bird* itself made clear that the injury caused by medical negligence is different in this regard from many other types of injury-producing events. We explained that the invisibility of injury-causing events resulting from deficient medical care makes a typical medical negligence case distinguishable from, for instance, a case arising from " 'an explosion, traffic accident, or electrocution.' " (*Bird, supra,* 28 Cal.4th at p. 921, quoting *Golstein, supra,* 223 Cal.App.3d at p. 1423.) Fairly read, *Bird* does not hold that plaintiffs who witness a serious traffic accident also may not recover for their emotional trauma unless they " 'experience a contemporaneous sensory awareness of the causal connection between the negligent conduct' " that led to the accident " 'and the resulting injury.' " (*Bird,* at p. 918.) To the extent the Court of Appeal majority in this case read *Bird* otherwise, we hold that it was in error.

The Court of Appeal majority also relied on the decision in *Fortman v. Förvaltningsbolaget Insulan AB* (2013) 212 Cal.App.4th 830 (*Fortman*), a products liability case. (See *Downey, supra,* 90 Cal.App.5th at pp. 1049–1050, 1053.) In *Fortman,* the plaintiff brought a bystander claim for the distress she suffered when she saw her brother die while they were scuba diving. (*Fortman,* at p. 832.) At the time, the plaintiff thought that her brother was having a heart attack. But months later she learned that the true cause of the accident was a catastrophic equipment failure: "a plastic flow-restriction insert" in her brother's dry suit "had become lodged in [his] second-stage regulator [and] prevented him from getting enough air to breathe while underwater." (*Ibid.*; see *id.* at p. 845.)

The Court of Appeal concluded that the plaintiff had no viable claim for negligent infliction of emotional distress against the manufacturer of the defective flow-restriction insert because

she "thought her brother had suffered a heart attack; she did not contemporaneously perceive his injuries were being caused by the company's defective product." (*Fortman, supra*, 212 Cal.App.4th at p. 834.) The Court of Appeal reasoned that the "unobservable" character of the product failure made the case more analogous to medical malpractice scenarios than to ordinary accident cases: "Fortman witnessed her brother's injury, but like the parents in *Golstein* who were unaware of the radiation overdose, Fortman had no contemporaneous awareness of the causal connection between the company's defective product and her brother's injuries." (*Id.* at p. 845.)

The scenario in *Fortman* is an unusual one, and whether the court analyzed it correctly is beyond the scope of the issues presented in this case. For our purposes it suffices to observe that *Fortman* offers no clear answer to the question now before us. Much as in *Bird* and *Golstein*, the court in *Fortman* did not probe the conceptual relationship between "the injury-causing event" and "the defendant's conduct" because, as the court saw it, the two things were inextricably intertwined. The plaintiff understood that her brother had been injured only after she was informed, months after the event, that he had experienced an injury-producing equipment failure. At the time that she saw her brother die, she thought that he was dying of a natural cause not attributable to an outside force acting on him, so she did not understand that her brother *was being injured* — that what she was witnessing was *an injury-producing event*. Ultimately, the dispositive issue was *Thing*'s requirement that the plaintiff "have an understanding perception of the 'event as causing harm to the victim.'" (*Fortman, supra*, 212 Cal.App.4th at

p. 841, fn. 4, quoting *Bird, supra,* 28 Cal.4th at p. 920.)[8]  As *Fortman* itself recognized, it is a different issue whether the bystander must also contemporaneously be aware that the injury-producing event was caused by the conduct of some third party.  (*Fortman,* at p. 841, fn. 4.)

*Fortman* had no occasion to decide that issue.  But in the course of analyzing the question before the court, *Fortman* did discuss — and distinguish — several cases that suggest the answer to that question is no.  (See *Fortman, supra,* 212 Cal.App.4th at pp. 839–843; see *id.* at p. 841, fn. 4 [citing cases as illustrations of the proposition that "*Thing* does not require that the plaintiff have an awareness of what caused the injury-producing event"].)  For example, in *Ortiz v. HPM Corp.* (1991) 234 Cal.App.3d 178 (*Ortiz*), the Court of Appeal addressed whether a plaintiff could recover for emotional distress suffered when she had found her husband unconscious

_____

[8]    The *Fortman* court distinguished other scenarios involving product-related injuries where a bystander would immediately perceive the event as injury-causing: "We . . . do not purport to hold that a plaintiff could never recover emotional distress damages under the bystander theory of recovery after perceiving a product-related injury. . . .  [W]e can envision a number of scenarios in which a bystander plaintiff might recover against a product manufacturer for [negligent infliction of emotional distress].  A plaintiff would satisfy the second *Thing* requirement if he or she were present at a backyard barbecue and observed the defendant's propane tank connected to the barbecue explode and injure a close relative, or if the plaintiff observed a ladder collapse and injure a close relative.  Such accidents would not be beyond the plaintiff's contemporaneous, understanding awareness of the event (i.e., product failure) inflicting harm to the victim.  The plaintiff need not know the cause of the propane tank explosion or why the ladder collapsed." (*Fortman, supra,* 212 Cal.App.4th at p. 844.)

and trapped in a plastic injection molding machine. The trial court had granted a nonsuit in the defendants' favor on the ground that, because the plaintiff had not witnessed her husband's initial fall into the machine, she had not perceived the injury-causing event contemporaneously. (*Id.* at p. 182.) The Court of Appeal reversed on the ground that the injury-producing event did not end with the initial fall, but continued while the plaintiff observed her husband unconscious, pale, and bleeding from his left arm, as the machine was still running and its "air cylinder was pressing across his chest, pinning him against the stationary platen of the machine." (*Id.* at p. 184.)[9] In other words, what mattered was that the plaintiff had witnessed at least part of an injury-producing event — her husband being crushed by a machine. The court did not insist that the plaintiff also be contemporaneously aware that the accident was attributable to a defect in the manufacture of the machine.

Another case decided a few months later, *Wilks v. Hom* (1992) 2 Cal.App.4th 1264 (*Wilks*), is perhaps even more instructive. In *Wilks*, the Court of Appeal held that a mother who had seen, heard, and felt a residential explosion and fire

---

[9] The Court of Appeal also rejected the argument that the plaintiff had not perceived the injury-causing event because she had not perceived "the permanent injury" that her husband had suffered: oxygen deprivation. (*Ortiz, supra,* 234 Cal.App.3d at p. 186.) The plaintiff satisfied *Thing*'s contemporaneous perception requirement because "she was fully aware" that her husband was being injured when she found him: "Even if she could not 'perceive' the full extent of the damage resulting from oxygen deprivation, she was clearly aware that his body was limp, that blood was running down his arm, and that he did not respond when she spoke to him." (*Ibid.*)

that killed one of her daughters and injured her other daughter could recover for negligent infliction of emotional distress. The plaintiff satisfied *Thing*'s second requirement because "she personally and contemporaneously perceived the injury-producing event and its traumatic consequences." (*Id.* at p. 1273.) It did not matter that the mother "could not visually witness the infliction of injuries" to her surviving daughter; it was enough that "she was most evidently present at the scene of the accident, was personally impressed by the explosion at the same instant damage was done to her child, and instantly knew of the likely severe damage to the child." (*Id.* at p. 1271.)

There was no question that the mother lacked contemporaneous awareness of what had caused the explosion — a defective propane system in their rental home — or that it was attributable to the negligence of the defendants, the owners of the property who had installed the faulty propane system. But that did not appear to trouble the Court of Appeal. It was enough that the mother "was at the scene of the accident and was sensorially aware, in some important way, of the accident and the necessarily inflicted injury to her child." (*Wilks, supra*, 2 Cal.App.4th at p. 1271.)

The Ninth Circuit took a similar approach in *In re Air Crash Disaster Near Cerritos, Cal.* (9th Cir. 1992) 967 F.2d 1421. There, a plaintiff who was returning from the grocery store to her home, where she had left her husband and three children, when she saw it was being consumed by fire. (*Id.* at pp. 1424–1425.) When she arrived, she there saw an airliner also covered in flames. She later sued the federal government under the Federal Tort Claims Act (28 U.S.C. § 2671 et seq.), and the trial court found that the United States was partly responsible for the accident "due to the air traffic controllers'

failure to detect" a private plane's entry into restricted airspace and their "failure to give a traffic advisory" to the airliner crashed into the plaintiff's home after a midair collision with the private plane. (*Air Crash*, at p. 1423.) Relying on *Wilks*, the Ninth Circuit held that the plaintiff was entitled under California law to recover against the defendants for her emotional distress. The Ninth Circuit agreed with the trial court's conclusion that the injury-producing event included the initial crash and the consequent fire, and because the plaintiff "was present at the scene of the fire, she was present at the scene of the injury-producing event." (*Id.* at p. 1425.) It did not matter that, while she watched her house burning with her family inside, the plaintiff did not know that the fire had resulted from an airliner crash, nor did it matter that she could not have known the role air traffic controllers played in causing the fire. *Thing*'s contemporaneous awareness requirement was satisfied because the plaintiff had "experienced great emotional distress as a result of watching helplessly as flames engulfed her home and burned her family to death." (*Ibid.*)

*Fortman* also distinguished a third case involving a catastrophic fire, *Zuniga v. Housing Authority* (1995) 41 Cal.App.4th 82. There, one of the plaintiffs had found his residence in a housing project engulfed in flames after emergency personnel were already present and responding to the fire. The Court of Appeal concluded that his allegations that "he witnessed rescue efforts and futile attempts to extinguish the fire," saw "the fire was still causing damage, and possibly still causing injury to his many relatives inside," and saw his daughter's body carried out of the burning building were enough to satisfy *Thing*'s contemporaneous observation requirement. (*Zuniga*, at p. 103; see *id.* at p. 102.) The fire, as it turned out,

had been caused by an act of arson that none of the plaintiffs had witnessed, but the Court of Appeal was nonetheless satisfied that the plaintiff had observed the injury-producing event as it unfolded because he alleged that he had seen the fire while it was still raging and likely injuring his relatives. (*Id.* at p. 103.) Notwithstanding that the fire was caused by an intentional act of arson, the plaintiff was allowed to bring a claim for negligent infliction of emotional distress against the Housing Authority of Los Angeles based on the Housing Authority's alleged breach of its duty to provide safe public housing. (*Id.* at pp. 90–91, 103.) As in *Ortiz*, *Wilks*, and *Air Crash*, what mattered was that the father had perceived the injury-causing event and immediately understood that his daughter and other family members were suffering injury; that he may not have known right away what role the Housing Authority played in the fire did not bar his recovery.

In sum, neither *Bird* nor subsequent cases have required contemporaneous awareness of the causal connection between each defendant's conduct and a victim's injury. On the contrary, several post-*Thing* cases have at least implicitly rejected such a requirement by allowing recovery for plaintiffs who have witnessed injurious explosions, fires, and other similar accidents, even if they could not have been aware at the time that the defendant had contributed to these disastrous events. The Court of Appeal in this case erred in reading the cases otherwise.

## C.

Recognizing that we have not previously required contemporaneous awareness of the defendant's contribution to the injury, as distinct from awareness of the injury-causing

event, the question becomes whether we should impose such a requirement now. We see no persuasive reason to do so.

It is not difficult to see why the courts in *Ortiz*, *Wilks*, *Air Crash*, and *Zuniga* allowed recovery for negligent infliction of emotional distress even though none of the plaintiffs in those cases claimed to have understood the causal connection between the defendants' conduct and the injury to their close relatives when they perceived those relatives being injured. Much as in *Dillon*, the plaintiffs witnessed shocking and traumatic events in which their close relatives were severely injured or killed, and they foreseeably suffered emotional distress as a result. That distress was no less because they may not have, and perhaps could not have, understood all the forces that contributed to the events they were witnessing.

It is, of course, true that not all forms of emotional trauma associated with harm to a loved one are compensable. The Court of Appeal correctly noted that the plaintiff must have suffered trauma from perceiving " 'the injury-producing *event*, itself' " rather than " ' "on viewing or learning about the injurious *consequences* of [the defendant's] conduct." ' " (*Downey, supra*, 90 Cal.App.5th at p. 1046, quoting *Bird, supra*, 28 Cal.4th at p. 916.) But as cases like *Thing* make clear, this means only that the emotional trauma must be the result of directly witnessing and understanding that harm is being done — not the result of learning of the harm after the fact. This is why *Dillon* instructed courts to give weight to "[w]hether the shock resulted from a *direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident*, as contrasted with learning of the accident from others after its occurrence." (*Dillon, supra*, 68 Cal.2d at pp. 740–741, italics added.) A plaintiff is not merely experiencing "the results" of an

injury-causing event when that plaintiff witnesses an accident or other event that has resulted in severe injury to a loved one. The emotional trauma that comes from witnessing such an accident exists regardless of whether the plaintiff is aware at the time of the accident of all the individuals or entities that have contributed to the accident through their conduct.

The City and the Sevacherians suggest that we should require awareness of the defendant's contribution to the accident in order to cabin the potential scope of negligence liability, particularly in an age when technology makes it possible to perceive more events unfolding in more places than ever before. In support of this requirement, they note that concerns about unlimited liability can "justify restrictions on recovery for emotional distress notwithstanding the sometimes arbitrary result." (*Thing, supra,* 48 Cal.3d at p. 664; see also Rest.3d Torts, Liability for Physical and Emotional Harm, *supra,* § 48, com. e, p. 202 ["There is an unavoidable arbitrariness to the line-drawing in this area"].)

Our task in identifying appropriate restrictions, however, is to "balance the impact of arbitrary lines which deny recovery to some victims whose injury is very real against that of imposing liability out of proportion to culpability for negligent acts," taking into account "the importance to the administration of justice of clear guidelines under which litigants and trial courts may resolve disputes." (*Thing, supra,* 48 Cal.3d at p. 664.) We see no reason why this balance ought to tip in favor of circumscribing recovery based not on whether the plaintiff has suffered emotional harm from witnessing a loved one being injured, but whether the plaintiff is also contemporaneously aware of all those responsible for those injury. We can assume along with the City and the Sevacherians that current

telecommunications technology has created more scenarios where potential plaintiffs might witness a loved one being injured. But they have not explained how requiring contemporaneous understanding of how each tortfeasor has contributed to the injury is a necessary, fair, or administrable limitation on liability.[10] Neither the City nor the Sevacherians have shown that applying the threshold awareness requirement for negligent infliction of emotional distress, in the manner it was articulated in *Thing*, is inadequate to prevent "ever widening circles of liability." (*Thing*, at p. 653.) We thus decline to superimpose an additional limitation that would require awareness not only of "the injury-producing event" (*id.* at

---

[10] As we have already noted (see fn. 2, *ante*), the Court of Appeal here concluded that Downey was "present" at the scene of the car crash because "she contemporaneously sensed auditorily the accident and the fact Vance was injured." (*Downey*, *supra*, 90 Cal.App.5th at p. 1052; see *id.* at pp. 1052–1053, citing *Bird*, *supra*, 28 Cal.4th at p. 916 ["*Thing*'s requirement that the plaintiff be contemporaneously *aware* of the injury-producing event has not been interpreted as requiring visual perception of an impact on the victim. A plaintiff may recover based on an event perceived by other senses so long as the event is contemporaneously understood as causing injury to a close relative"].) Neither the City nor the Sevacherians challenge that conclusion here. Rather, the City and the Sevacherians accept the premise that, at least in certain cases, plaintiffs can be virtually "present" at the injury-producing event. This case does not ask us to examine the soundness of this undisputed premise and we therefore offer no opinion on it.

p. 666), but also of the role the defendants may have played in causing it.[11]

In sum, we hold the following: Neither our precedent nor considerations of tort policy support requiring plaintiffs asserting bystander emotional distress claims to show contemporaneous perception of the causal link between the defendant's conduct and the victim's injuries. Here, Downey has alleged that when she was on the phone with her daughter she heard metal crashing against metal, glass shattering, and tires dragging on asphalt — from which she knew immediately that her daughter had been in a car accident. Downey has also alleged that she understood that her daughter was seriously injured because she could no longer hear her after the crash and a stranger who rushed to the scene told her to quiet down so that he could find a pulse. *Thing* does not require Downey to allege that she was aware of how the defendants may have contributed to that injury. The Court of Appeal erred in concluding otherwise.

---

[11] Amici curiae California Medical Association, California Dental Association, and California Hospital Association suggest that not requiring a plaintiff bringing a bystander distress claim to understand contemporaneously the causal connection between the defendant's conduct and the victim's physical injuries will lead to the " 'limitless liability' " *Thing* sought to avert. (Quoting *Thing, supra,* 48 Cal.3d at p. 664.) We disagree; *Thing* and follow-on cases have never so required and no limitless expansion of liability for emotional distress has ensued. Moreover, nothing we say today should be interpreted as calling into question our analysis in *Bird*, which remains the controlling precedent for negligent infliction of emotional distress claims arising from the provision of deficient medical care to a close relative.

## III.

We reverse the judgment of the Court of Appeal and remand for further proceedings.

**KRUGER, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Downey v. City of Riverside

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 90 Cal.App.5th 1033
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S280322
**Date Filed:** July 22, 2024

_____

**Court:**  Superior
**County:**  Riverside
**Judge:**  Harold W. Hopp

_____

**Counsel:**

Rizio Lipinsky Law Firm, Greg Rizio and Eric I. Ryanen for Plaintiff and Appellant.

Phaedra Norton, City Attorney, Michel A. Verska, Cecila Rojas and Edward J. Reid, Deputy City Attorneys, for Defendant and Respondent City of Riverside.

CP Law Group, Gary H. Klein, Shelby Kennick; Freeman Mathis & Gary and Christian E. Foy Nagy for Defendants and Respondents Ara and Vahram Sevacherian.

Cole Pedroza, Curtis A. Cole and Cassidy C. Davenport for the California Medical Association, the California Dental Association and the California Hospital Association as Amici Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Greg Rizio
Rizio Lipinsky Law Firm PC
2677 North Main Street, Suite 225
Santa Ana, CA 92705
(714) 547-1234

Edward J. Reid
Deputy City Attorney
3750 University Avenue, Suite 250
Riverside, CA 92501
(951) 826-5567

Shelby Kennick
CP Law Group
655 North Central Avenue, Suite 1125
Glendale, CA 91203
(818) 853-5131